Suydam v. Voorhees.

---

JOHN L. SUYDAM, executor, &c.,

v.

ISAAC S. VOORHEES et al., executors of David M. Perrine, deceased.

[Filed April 10th, 1899.]

1. Under our act to prevent lapsing (*Gen. Stat. p. 3763 § 34*), when a legatee is a child of the testator and dies before the testator, his children take a vested interest in the legacy, free from the debts of their father.

2. An executor who pays a debt of his testator with his own funds, will be subrogated to the right of the creditor.

3. A devisee of a life interest in lands of the testator, who pays with his own funds a debt of the testator, which debt is either charged upon the land by the will or payable out of the land by statute, will be subrogated to the creditor's right.

4. A general direction to pay debts is a general charge of the debts upon the testator's land, but leaves the personal estate the primary fund for such payment.

5. Whether, upon a bill by a creditor to enforce such a charge, this court will take an account of the personal estate, or leave the orphans court in which the account has been filed to complete it, will depend upon circumstances.

The complainant is the executor of Willard Perrine, deceased, who was one of the executors of the will of his father, David M. Perrine, deceased. The complainant, as the executor of Willard, seeks to be subrogated to the position of a creditor of the estate of David M. Perrine, whose debt Willard paid after the death of his father; and seeks to have certain land, the title to which is now in the heirs of David M. Perrine, sold to pay the amount of the said debt.

*Messrs. A. H. & T. Strong*, for the complainant.

*Messrs. Voorhees & Booraem*, for the executors of David M. Perrine.

*Mr. Abraham V. Schenck*, for the heirs-at-law.

REED, V. C.

The first question is, whether Willard Perrine paid the debt of the estate of his father with his own money, or whether he paid it out of the assets of his father's estate.

The second question is, if he paid it with his own money, is his executor entitled to be substituted in place of the creditor whose debt was so paid.

The third question is, if the executor of Willard is entitled to be subrogated, will this court in this suit order the said debt to be raised by a sale of the real estate which belonged to the deceased debtor.

Suydam v. Voorhees.

The first question is to be decided upon the following proved facts: David M. Perrine, the father of Willard, died in April, 1895. In his will he named as his executors Isaac S. Voorhees, Charles H. Edwards and his son Willard. David M. Perrine, at the time of his death, owed his brother, Redford Perrine, two notes and a check, together amounting to the sum of $4,883.88. In May, 1895, or soon after the death of David M. Perrine, Charles P. Perrine, another brother of David M. Perrine, died, leaving in his will a legacy of $8,000 to David M. Perrine. On August 6th, 1896, the executors of Charles P. Perrine paid to Willard Perrine, who was then one of the executors of David M. Perrine, the amount of the legacy left to David M. Perrine. They did it in this way: they turned over to Willard a mortgage for $5,000, another mortgage for $1,000, which mortgages had been held by Charles Perrine, and, after deducting the amount of the collateral tax on the legacy, paid the remainder in cash. On the same day Willard paid Redford Perrine the amount of the debt he held against the estate of David M. Perrine. He did this by assigning to him the $5,000 mortgage received from the executors of Charles P. Perrine, receiving in cash from them the difference between his debt and the amount of the mortgage.

The executors and heirs of David M. Perrine insist that the legacy of $8,000 which had been left by Charles Perrine belonged to the estate of David M. Perrine, and, therefore, when Willard paid the debt due to Redford Perrine, he paid it out of the assets of the estate of which he was one of the executors.

The complainant, on the other hand, insists that David M. Perrine, the legatee, having died before his brother Charles, his legacy of $8,000 went to Willard, the son of David, and so Willard paid the debt with his own money. Which of these counter-contentions is the true one is the first question to be answered.

By the common law, the legacy to David M. Perrine would have lapsed. It is now saved by our statute. *P. L. of 1887, Gen. Stat. p. 3763 § 34.* This is the language of the act: "Whenever any estate of any kind shall or may be devised or

bequeathed by the testament and last will of any testator or testatrix to any person being a child or other descendant of such testator or testatrix, or being a brother or sister or any descendant of a brother or sister of such testator or testatrix, and such devisee or legatee shall, during the life of such testator or testatrix, die testate or intestate, leaving a child or children, or one or more descendants of a child or children who shall survive such testator or testatrix, in that case such devise or legacy to such person so situated as above mentioned, and dying in the lifetime of the testator or testatrix, shall not lapse, but the estate so devised or bequeathed shall vest in such child or children, descendant or descendants of such legatee or devisee, in the same manner as if such legatee or devisee had survived the testator or testatrix and had died intestate." Willard took the $8,000 legacy bequeathed to his father by force of this statute In my judgment, he took it free from any claim except such as might have existed in favor of his father. The exception is made because of the case of *Denise* v. *Denise, 10 Stew. Eq. 163,* in which Vice-Chancellor Van Fleet held that if the legatee named was indebted to the testator, the child of the legatee took the legacy subject to a liability to have the legacy diminished to the amount of the debt. It was said in the opinion in that case that a statutory legatee was a mere substitute for the testamentary legatee, and as such bore the burdens and was subjected to the same equities which would have existed against him. The burdens meant were those which arose out of the relations which existed between the testamentary legatee and the testator. This is clear from this language of the opinion: " It [the statute] should be held to put the substitute legatee in the place of the parent, and to give him just what the parent would have been entitled to, subject to the same equities that his parent would have been subjected to, and bound by the same rules of justice that the parent would have been bound by. He must take it in the same manner as his parent would have taken." The last sentence contains the pith of the rule as between the testator and the statutory legatee. The latter takes what the testamentary legatee would have taken. It does not mean that

the deceased legatee takes an interest in the legacy which passes through him to his child, and which, in passing, is liable to be seized upon by the creditors or the personal representatives of the father. Such a meaning would be contrary to the words of the act. Under the statute there is no vesting in the father for an instant. The legacy, which would have vested in the father had he lived, is by the statute vested in the first instance in the son. In respect to it there is nothing for the personal representatives of the father to administer nor for his creditors to reach.

I am aware that it is held under the English statute to prevent lapses (*1 Vic. c. 26 § 33*) that the property given belongs to the deceased legatee, as if he had survived the testator. *Johnson v. Johnson, 3 Hare 157 ; In bonus Parker, 1 Swab. & Tr. 523 ; Re Mason's Will, 34 Beav. 494.*

So, also, it is held that if a married female devisee dies before the testator her husband is entitled to his curtesy in her estate. *Eager v. Furnival, 17 Ch. Div. 115.* But the language of the sections relative to lapses in the English act radically differs from the text in our act. The former provides that "when the devisees or legatees shall die in the lifetime of the testator, leaving issue, and any such issue of his person shall be living at the time of the death of the testator, such devise or bequest shall not lapse, but shall take effect as if the death of such person had happened immediately after the death of the testator." By the express terms of the English act, it is perceived, the life of the devisee is to be regarded as prolonged until the devise or bequest can vest. The devise or legacy shall take effect as if the death of the devisee or legatee had happened after the death of the testator. The statute says no more. Of course, therefore, if the death of the former had not occurred until after the death of the latter, the devise or legacy would have vested in the former. And as the statute stops with the provision that the life of the former shall be, for purposes of construction, prolonged until after the death of the testator, the vesting in him must be presumed to occur. There is no express provision in the English act for vesting at all, and so the construction given

to the act was the only possible one. "The act," says Mr. Jarman,

"does not substitute the surviving issue for the original devisee or legatee, but makes the gift of the latter take effect notwithstanding in the testator's lifetime, in the same manner as if his death had happened immediately after that of the testator. The subject of the gift therefore will, to all intents and purposes, constitute the disposable property of the deceased donee, and as such, will either devolve upon his representatives or follow the disposition of his will."

The fact of the death of the legatee before the death of the testator is in our act quite different. The provision is that the legacy shall not lapse, but shall vest in such child or descendant in the same manner as if such legatee had survived the testator, and had died intestate. The concluding words are employed merely to fix the manner in which the legacy shall vest in the statutory substitute. The legatee is not to take as if he had survived the testator, nor does the statute create merely a legal presumption that the legatee survived the testator without more, as in the English act, but the sole provision in our act is that the legacy shall vest in the child or descendant as if the legatee had survived the testator.

· But our act concerning lapses is not peculiar to our legislation. The statute of New York State contains a provision similar to ours, the only difference being the use of the words "as if" in the New York instead of "in the same manner as if" in our statute; so that the New York statute reads "shall vest in such child as if such legatee had survived the testator," while in ours it is "in the same manner as if the legatee had survived the testator." The words "as if" and the words "in the same manner as if" mean exactly the same, and the two statutes are, for the purpose of construction, exactly alike. In the case of *Cook* v. *Munn, 12 Abb. N. Cas. 344,* Judge Larrimore gave a construction of the New York statute in respect to whether the widow and creditors of a deceased legatee had an interest in the estate or whether it vested absolutely in his children. He held the latter.

The same statute has been in force in Maryland since 1810,

and in *Glenn* v. *Belt, 7 Gill & J. 362,* it was held by the court of appeals of that state that the executor or administrator of the named legatee could not take as assets that which never could have been the testator's or intestate's, and that the testator or intestate took no interest in the legacy. This construction was followed in *Wallace* v. *Du Bois, 62 Ind. 153.* Alabama has the same statute, and in *Jones* v. *Jones, 37 Ala. 646,* the supreme court of that state, reversing a chancellor, held that the legacy passes directly to the surviving children of the legatee, and does not vest in the administrator of the deceased legatee. By reason and authority, therefore, the $8,000 legacy at the time it was paid was the property of Willard, and therefore Willard paid the debt of his father's estate with his own money.

The next question is, did he by such payment become entitled to be substituted for the creditor whose debt he thus paid? If he did, then his executors can enforce against the estate of his father that claim in the same manner as he himself could if living.

It is entirely settled that one who volunteers to pay another's debt has no claim to subrogation, but if he has an interest which is menaced by the existence of the debt, he is relieved of the character of a volunteer. Nor does the quantity of the interest which is likely to be destroyed or impaired by the existence of the debt matter. If he has any palpable interest which will be protected by the extinguishment of the debt, he can pay the debt and be entitled in equity to hold and enforce it just as could the original creditor. A tenant for years who pays a mortgage upon the leased premises will be subrogated. *Hamilton* v. *Dobbs and Robinson, 4 C. E. Gr. 227.* A widow who discharges a lien on the estate of which she is dowable will be subrogated to the right of the lienor. *Woods* v. *Wallace, 30 N. H. 384.* A devisee (*Redmond* v. *Redmond, 63 N. C. 242*) or an heir (*Chapin* v. *Sullivan, 128 Ind. 50*) who pays a debt to protect his interest will be subrogated. A discharge by certain legatees of a judgment against the estate will entitle them to substitution to the position of the judgment creditor. *Mitchell* v. *Mitchell, 8*

*Humph. 359.* Instances in illustration of the general rule above stated might be extended indefinitely.

Now, in the will of David M. Perrine, he devises to his son Willard the use of the homestead farm of eighty-one acres, together with a ten-acre wood-lot, during his natural life, subject to the maintenance of his mother during her life, and directs that after the death of Willard such lands be equally divided between the lawful heirs of Willard, and if Willard should die without leaving any lawful issue, then the said lands to be equally divided between the lawful heirs of the testator. This land was liable to be sold for the payment of the debt of Redford Perrine against the estate of his father. Willard, by the payment of this debt, therefore, became entitled to be substituted for the creditor.

But he is possessed of a right of subrogation upon another ground. He was one of the executors of his father's will, and the rule is entirely settled that an executor who advances money to pay his testator's debts gains individually a right to be subrogated. *Woolley* v. *Pemberton, 14 Stew. Eq. 394, 397 ; De Concillio* v. *Brownrigg, 6 Dick. Ch. Rep. 532.* So far, therefore, as concerns the prayer of the executors of Willard to be put in the same position as the creditor whose debts Willard paid, the right to relief is clear. But they seek further relief, and that is, being substituted to the position of Redford Perrine, the creditor of the estate, that this court will order the real estate of the deceased, the title of which is now in the heirs of David M. Perrine, to be sold for the payment of this debt.

In *Edwards* v. *McClave, 10 Dick. Ch. Rep. 151 ; affirmed on appeal, 10 Dick. Ch. Rep. 822,* Vice-Chancellor Emery held that a suit by a creditor of an intestate whose claim had not been admitted by the administrator or established by judgment, would not lie in equity, for the purpose of charging the debt upon the lands of the intestate, and directing a sale thereof; that the remedy was an action at law under the statute. In this case, however, there is a general charge of debts upon the testator's real estate. In his will, the testator directs that his debts be fully

paid and satisfied as soon as conveniently can be after his decease. The effect of this direction was to charge the debts of the testator upon his real estate. *Theob. Wills 671; Hawk. Wills 282; Shreve* v. *Shreve, 2 C. E. Gr. 487*. This charge of the debt upon the land gives rise to a right in the creditor to enforce, in this court, the equitable lien thus created. *3 Pom. Eq. Jur. 1247*.

But a general charge of debts upon the land of the testator does not relieve the personalty from its primary liability to answer for such debts. Therefore the land is liable for the whole of this debt only in case the personalty is absorbed in liquidating the other debts. Before the land can be sold to pay the whole of this debt, it is essential that it should be determined whether all of the personalty had been applied to the payment of other debts, or if not, then what amount remains to be applied to the payment of this. It appears that the two surviving executors of David M. Perrine filed an account with the surrogate of Middlesex county, which account was approved by the orphans court of that county on October 26th, 1897. Mr. Edwards is now the only surviving executor of David M. Perrine, and he says the account is not final, and that there is one detached property still unsold. There is also a lot which has been sold since the account was filed to one George R. Thomas for $231.77, and there were two other lots sold to William T. Perrine, one for $131 and the other for $100, which are not in the account. The executor who seems to have transacted all the business of the estate is Mr. Voorhees, now deceased, and Mr. Edwards, the surviving executor, can give little information aside from what he heard from his colleague. He says that he was informed that Mr. Voorhees sued William T. Perrine for the consideration to be paid for the $100 lot and got a judgment, Now, the question is whether a settlement of these matters, and the amount of the personalty remaining in the hands of the executor to be applied to the present claim, should be left to the orphans court, which has already taken jurisdiction. The heirs of David M. Perrine, by a cross-bill, ask for an accounting by his executors. The prayer for this relief was mainly induced, without doubt, by the opin-

ion that the $8,211 received by Willard from the executors of Charles Perrine were assets of the estate of David M. Perrine.

So far there is no ground for an accounting. The matter still unaccounted for is the unsold lot, and the consideration for the lot sold to George R. Thomas and the two lots sold to William T. Perrine. The orphans court can deal with these matters, and after having acquired jurisdiction this court will not seize upon the litigation for any reason now apparent. I do not know that this will occasion any more delay than if the accounting was removed into this court. If it does Willard's executors have no cause for complaint. If Willard had permitted the claim which he paid to be proved against the estate the entire matter would now probably be ready for settlement in the orphans court. By holding the debt unproved against the estate for the purpose of protecting his interest in the homestead property, he has made this additional proceeding by his executors necessary.

I will, therefore, not order an accounting now, but will make a decree for subrogation, with leave to the complainant, if the accounts of the executors are not finally settled in the orphans court within three months, to apply for a decree for an account in this case. When the accounting is completed, if completed in the orphans court within that time, then to apply in this suit for an order to sell the lands to pay the amount remaining due after the application of such balance to the Redford Perrine debt. I assume that there was an order taken to bar creditors.