On June 24th, 1924, Mary E. Kennedy, a widow, owned two lots in the Borough of Maywood, Bergen County, on which were erected a dwelling house and garage. On said date she gave a bond secured by a mortgage in the sum of $3,000 to the Peoples Trust and Guaranty Company of Bergen County (now Peoples Trust Company of Bergen County). The mortgage bore interest at six per cent. and was to be amortized by semi-annual payments of $175 each.
Later Mrs. Kennedy married Thomas F. Coughlin, the complainant herein. She died about November 12th, 1936, testate. By her will she devised the real estate, above mentioned, to the complainant for life with remainder over to her two sons by her former marriage, Frank H. Kennedy and Chester W. Kennedy. Frank H. Kennedy died intestate April 18th, 1932, leaving an infant son surviving.
After Mrs. Coughlin's death, complainant paid the interest due on the mortgage and also paid about $1,100 which represented the balance of the principal as the same became due under the terms of the mortgage. After making the final payment, complainant took an assignment of the mortgage. Subsequently complainant made demand upon the remaindermen for the amount he had paid on account of the principal, *Page 385 
which payment was refused. He thereupon filed this bill to foreclose the mortgage.
Complainant included himself as a defendant for the reason that he was the life tenant and entered a decree pro confesso
against himself as such defendant. The practice followed in this respect is not the correct procedure. Where a complainant has diverse interests in a controversy, the proper procedure is to state them in the bill of complaint and submit himself to the jurisdiction of the court in his several capacities. SeeShippee v. Shippee, 122 N.J. Eq. 570.
The other defendants filed answers whereby they put complainant to his proof and set up by way of counter-claim two causes of action against the complainant. The first cause of action of the counter-claim alleges that complainant, as life tenant, was under a duty to pay the interest on the mortgage and that upon the payment of the mortgage by the life tenant the remainderman became entitled to a credit upon the principal of the mortgage paid by complainant of a sum equal to the interest which might accrue during complainant's expectancy of life. The second cause of action charges waste against the complainant because he failed to pay taxes as they accrued and because he neglected to make proper and necessary repairs to the premises.
Complainant applied to this court to strike out the answers and counter-claim, which application was laid over until final hearing at which time the application was renewed. The grounds on which the application was based were that the answers were sham and the counter-claims could not be conveniently heard and were not cognizable in equity. This motion is denied for the reason that the answers are not sham and the counter-claims are cognizable in this court.
Where a person is compelled to pay an existing obligation such as a mortgage to protect his own interests or rights in property, he is entitled to be subrogated to the rights of the creditor whose debts he paid and to the lien of the encumbrance thus discharged. A life tenant is one of that class of persons who is entitled before foreclosure to redeem and protect himself in the enjoyment of his estate by so doing. *Page 386 
A stranger or volunteer cannot claim a right to contribution. However, if a life tenant discharges an existing mortgage he may or may not be entitled to demand contribution from the remainderman. Whether or not he is entitled to contribution is generally a question of intention. If a life tenant by paying the mortgage intends a benefaction or gift to the remainderman no contribution will be declared. Kinkead v. Ryan, 65 N.J. Eq. 726.
On the other hand if no such intention appears and the mortgage is canceled and not assigned, equity may consider the mortgage still alive for a limited purpose. I am satisfied in this case that complainant did not intend to give to or benefit the remaindermen although the defendants claimed that complainant stated he wished to "turn the property over to them, free and clear."
If a life tenant, in order to protect his interest, pays an existing encumbrance without intending to do it for the benefit of the remaindermen he does not, strictly speaking, succeed to all the rights of a creditor whose debt he paid nor does he acquire the identical lien which was theretofore existent. What really occurs, as pointed out by the Court of Errors and Appeals in Kinkead v. Ryan, above cited, is that the life tenant stands in the place of the mortgagee "for the purpose of securing contribution" from the remaindermen.
The effect of a discharge of a mortgage by a life tenant is well stated in 33 Am. Jur., Life Estates 997 § 461, as follows:
"The rule is well settled that by paying off a lien, mortgage, charge, or other encumbrance against the property of an estate, a life tenant acquires a lien on the share of the property belonging to the owner or owners of a future interest therein or is subrogated to the lien rights of the encumbrancer, to the extent to which the future interest was responsible for the indebtedness paid off by the life tenant."
When a life tenant in possession purchases an existing lien or encumbrance upon the estate, he is regarded as doing so for the joint benefit of himself and the remaindermen or reversioners. He does not hold such claim or interest for his exclusive benefit if the holders of the future interest wish to make reimbursement of their proportionate share. Therefore, if the life tenant acquires the mortgage he does not *Page 387 
succeed to the full rights formerly held by the mortgagee in that he cannot maintain a bill to foreclose the mortgage. If this were not so such a purchaser would be in a position to require the remaindermen to repay him not only their proportionate share of the mortgage debt but the whole amount thereof. This must be so irrespective of the language used in the case of Suydam v.Voorhees, 58 N.J. Eq. 157. It seems to me that the language used in the Suydam Case is broader than the accepted rule. It has long been a rule of this court that a life tenant is bound to pay the interest on encumbrances at least to the extent of the income received from the property.
I have, therefore, concluded that the bill of complaint should be for contribution against the remaindermen and not a bill to foreclose. Equity regards the substance and not the form. This suit is a controversy between the life tenant and the remaindermen and the pleadings should be in a proper form to show that controversy. As stated by Lord Justice Turner, "A man cannot have the double right of a tenant for life and a mortgagee."Kensington v. Bouverie, 7 De G.M. G. 134. Solicitors of complainant in their brief state that the complainant does not as a life tenant seek to foreclose the mortgage but that he files his bill of complaint "on the well established equitable principle of subrogation."
It, therefore, appears that an amended bill of complaint should be filed to cure the situation.
It is necessary to determine the method of calculating the amount chargeable to the remaindermen. Upon redemption part of the sum which the life tenant paid is the amount which he is obliged to pay and, therefore, need not be refunded by the remaindermen as it was his own debt. All of the principal sum due on the mortgage over and above the amount is in equity chargeable against the remaindermen. The rule stated in Pom. (5th ed.) §1223, is as follows:
"* * * the present worth of an annuity equal to the annual interest running during the number of years which constitute his expected life represents the sum which A is liable to pay as his *Page 388 
individual indebtedness; the balance, after subtracting this sum from the mortgage debt actually paid to the mortgage, is the amount which B is liable to contribute."
The defendants at the hearing produced an expert who testified that according to the mortality tables, the complainant had a life expectancy of thirteen years and seven months. The period of such expectancy should be computed from the date the life estate was created. Complainant argues that the period of expectancy, according to the reports, should not be followed in this case because the life tenant is in poor health and cannot be said to have the same expectancy of life as the average man of his age. The rule stated above in Pom. 665 § 1223 note 4, is as follows:
"Knowing A's age, the `life tables' give the number of years he has yet to live, which, for the purposes of the rule, are taken as absolutely certain and correct. He is therefore bound to pay the annual interest on the mortgage for the number of years disclosed by the tables. Knowing the amount of interest due each year, and the number of years it must be paid, the `annuity tables' will give the present worth of such sum payable annually for the required number of years."
I conclude the rule to be followed is as above stated without consideration given to the life tenant's health.
The last question raised relates to a charge of waste and the application for the appointment of a receiver. The property is vacant and will require repairs before a tenant can be secured. There is little doubt that the property must be sold before an apportionment can be effected. It also appears that one of the remaindermen is not in a position to make contribution. Since there is no fund from which the expenses of repairs can be paid, the appointment of a receiver would place unnecessary expense upon the property in litigation.
I am inclined to the view that the defendants have proved the charge of waste. The amount or extent of such waste, as I indicated at the time of the hearing, will be referred to a master. The calculation of the amount due should also be determined by the master unless counsel can agree upon the same. *Page 389