ADA L. TODD et al., complainants-respondents.

*v.*

EXETER LAND COMPANY et al., defendants-appellants.

[Argued February 7th, 1929. Decided May 20th, 1929.]

432

*Messrs. McCarter & English (Mr. Robert H. McCarter,* of counsel), for the appellants.

*Messrs. Harcourt & Steelman* and *Messrs. Babcock & Champion,* for the respondents.

The opinion of the court was delivered by

HETFIELD, J.

The complainants filed their bill in this case for the purpose of obtaining a decree quieting title to a certain tract of land, consisting of a lot eighty and twenty-five hundredths by ninety feet, in Margate City, Atlantic county. The facts presented, which are not disputed to any extent, show that a corporation, known as the Margate Company, acquired a large tract of land for development purposes, and accordingly divided same into some one thousand five hundred and twenty-five lots. On March 8th, 1912, the company mortgaged the lot involved in this litigation to one Emma E. Moitz Doherty, trustee, for the sum of $2,200; subsequently a judgment was recovered against the Margate Company in the Atlantic Circuit Court, for $5,005.50, in favor of one Annie E. Hand; execution was issued, and levy made on the property of the company, including the lot in question, but before sale, the judgment was assigned to Raymond P. Read. On October 10th, 1916, the sheriff sold all the lands covered by the levy to the said Raymond P. Read, and it appears that Carlton

Godfrey, a law partner of Read's, furnished the money with which Read purchased the said judgment. The Exeter Land Company, one of the present defendants, was incorporated April 11th, 1917, Carlton Godfrey, Annie Godfrey and Raymond P. Read being the incorporators. The registered office of the Exeter Land Company was the office of Godfrey & Read, and Godfrey was its registered agent. On May 2d, 1917, Read and Godfrey joined in a deed to the Exeter Land Company, conveying the lands sold to Read by the sheriff, as well as other lands owned by Godfrey. This deed was recorded in the Atlantic county clerk's office, on May 5th, 1917. A bill to foreclose the Doherty mortgage was filed on the 16th day of May, 1917, or eleven days after the recording of the deed from Godfrey and Read to the Exeter Land Company. The foreclosure search was apparently made before the conveyance of the property in question to the Exeter Company, as it was not made a party defendant to the foreclosure suit. Read was made a defendant, and service of his subpœna and ticket was acknowledged by Godfrey & Read, attorneys, Godfrey acting for the firm. The foreclosure proceedings were not defended, and the lot in question was eventually purchased at sheriff's sale by the complainant, Emma Doherty. and after several mesne conveyances, was on December 21st. 1922, purchased by one Julian N. Ireland, who erected a dwelling thereon, costing him approximately $27,000, and for that purpose, obtained a construction loan from the Baltimore Life Insurance Company, and executed a bond and mortgage to it, for $15,000. The insurance company, for its protection, procured a title policy from the South Jersey Title and Finance Company. Ireland conveyed the premises in 1924 to F. Ernest Todd, Incorporated, and as part of the consideration, received a purchase-money mortgage from the Todd company for $10,000. After obtaining title, the Todd company mortgaged the land to one William Schmid, trustee, for $8,660.25, and subsequently gave another mortgage to one George J. Turcott for $2,050. The Todd company then conveyed the premises to Ada L. Todd, who, on March 30th, 1925, entered into an agreement to con-

vey the same to one Edward Liebe, by a general warranty deed. It appears that after the Liebe contract was made, the Chelsea Title and Guaranty Company examined the title, and discovered that the Exeter Land Company had not been made a party in the Doherty foreclosure suit, and therefore had not been foreclosed of its equity of redemption. It also appears that after the discovery of this defect in the title, the South Jersey Title and Finance Company purchased the $15,000 mortgage held by the Baltimore Life Insurance Company, no doubt realizing that an error had been made in its examination of the title.

The present bill of complaint was filed April 27th, 1926, and prays, in substance, that the complainant Ada L. Todd may be decreed to have a perfect title to the premises in question, that the mortgage created by Ireland and the subsequent owners be decreed to be good and valid liens in order of their respective priorities, and that the Exeter Land Company be decreed to have no estate, interest or right in, or encumbrances upon, the lands involved. After a hearing, the court of chancery allowed a decree granting the relief prayed for by the complainants.

We are in accord with the court below in its finding that the Exeter company should be charged, through Godfrey, its registered agent, with knowledge of the foreclosure suit and the erection of the dwelling on the premises, as it is well settled, that whatever puts a party upon inquiry, amounts in judgment of law to notice, provided the inquiry became a duty, and would lead to the knowledge of the requisite facts, by the exercise of ordinary diligence and understanding. *Hoy* v. *Bramhall, 19 N. J. Eq. 563.*

It is quite evident that the subpœna and ticket were sufficient to notify Godfrey, who was an officer of, and owned the controlling interest in, the Exeter company, that land in which Read had an interest, was involved. He well knew that Read had but a few days prior conveyed to the company the premises sold by virtue of the Hand judgment, and an examination of the foreclosure bill would have indicated just what land was affected. This, apparently, was not done, as God-

frey testified at the hearing that he did not know until a very short time before the present bill was filed that the Exeter company had any interest in this particular lot, or that the deed of Read and himself to the company conveyed the land in question, as the description in said deed was of such a character that it could not be determined whether this lot was conveyed, except by a very laborious examination. An inspection of the deed as it appears in the record shows that blocks eleven to seventy-five, inclusive, as shown on the Margate Park plan, on file in the county clerk's office, were conveyed; and the foreclosure bill indicated that lot number one in block eighteen, as shown on the same plan, was being foreclosed. Therefore, it does not appear that any great effort or lengthy examination would be required to ascertain that the same lot was involved in both transactions, and as Godfrey had been familiar with and interested in the Margate development for a number of years, it would have been a very simple matter for him to have determined the true situation.

The principle of equitable estoppel proceeds upon the ground that he who has been silent as to his alleged rights when he ought in good faith to have spoken, shall not be heard to speak when he ought to be silent. A person is not permitted to deny a state of things which by his culpable silence he has led another to believe existed and who has acted accordingly upon that belief. The doctrine always presupposes error on one side and fault or fraud upon the other, and some defect of which it would be inequitable for the party against whom the doctrine is asserted to take advantage.

The defendants, being in possession of sufficient facts to place them upon inquiry, permitted the property to be sold under foreclosure, and allowed the purchaser and her successors in title to pay all taxes and expend large sums of money in improvements, without a warning of any nature, as to the true situation, and they contend that by reason of the deed to the Exeter company being recorded several days before the foreclosure bill was filed, the complainants are chargeable with notice of the record title, and therefore had no right in the face of it to suppose that their title was clear. It is

not suggested that the complainants, knowing the title to have been searched, when the foreclosure suit was instituted, as well as by the title company, who issued the policy, were not acting in good faith, and on the supposition that all proper parties were made defendants in the foreclosure proceedings. The fact that the defendants might have discovered the true situation of the title, by examining the records, does not prevent them from setting up an estoppel, under the present circumstances, as pointed out in *Sumner* v. *Seaton, 47 N. J. Eq. 103,* which case also held that "courts of equity have, in many cases, given parties the benefit of an honest supposition as to title where the slightest examination of the record or other equally available source of information would have disclosed their error. In fact, to exclude the application of the maxim from cases where the party has implied or constructive notice of title from the record, would confine its application to a very narrow field. Absence of notice, both actual and constructive, of the adverse title would, in many cases, give the party the benefit of the plea of *bona fide* purchaser without notice and dispense with the necessity of setting up estoppel *in pais."*

Chancellor Zabriskie, in *Dellett* v. *Kemble, 23 N. J. Eq. 58,* held a party entitled to equitable aid against a judgment creditor of his grantor, where the judgment creditor had stood by and, without notice, permitted the former to build on the property in the honest belief that it was free from encumbrance, when he could have discovered the judgment by a search.

In view of all the circumstances, we think this case comes within the control of the equitable doctrine applied in the case of *McKelway* v. *Armour, 10 N. J. Eq. 115,* and followed in later cases, including *Megie* v. *Bennett, 51 N. J. Eq. 281; Dorfman* v. *Lieb, 102 N. J. Eq. 492.* In the case of *McKelway* v. *Armour, supra,* McKelway had by mistake built on Armour's lot instead of his own, which adjoined it. Armour supposed that McKelway was building on his own property, and did not suspect that he was, in fact, building on his. It was held that McKelway was entitled to relief, and that

Armour must buy the improvements at a valuation to be fixed by the court, or convey his lot to McKelway at a valuation to be fixed in like manner.

We conclude, therefore, that the complainants are entitled to the relief they seek, upon condition that they pay to the defendant Exeter Land Company the value of its equity of redemption in the property, at the time of the foreclosure sale, together with interest on that sum, during the period of occupation of the property by the complainant Ada L. Todd and her predecessors in title.

The decree of the court of chancery is therefore reversed, and the case remanded to that court, in order that a decree may be made, in accordance with the views herein expressed.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, KALISCH, CAMPBELL, LLOYD, CASE, VAN BUSKIRK, MCGLENNON, KAYS, DEAR, JJ. 11.