The Real Estate-Land Title and Trust Company, a corporation, complainant-respondent,

*v.*

J. Irwin Stout et ux., et al., defendants, and Ernest Schwehm and Stacy H. White, defendants-counter-claimants and appellants.

[Submitted May term, 1934.  Decided September 27th, 1934.]

*Mr. Joseph H. Carr,* for the appellant Ernest Schwehm.

*Mr. William Elmer Brown,* for the appellant Stacy H. White.

*Messrs. Bourgeois & Coulomb,* for the respondent.

The opinion of the court was delivered by

PERSKIE, J.

The determinative question involved on this appeal is whether the collateral bond signed by the appellants was delivered conditionally to respondent, as a result of which it made the bond unenforceable as to them.

It appears that appellants, together with four others, Messrs. Sale, Freihofer, Franz and Hetzell, were the owners, the real parties in interest (although title thereto was in the name of Sale), of a certain property on the south side of Virginia avenue, Atlantic City, New Jersey. It was purchased for the purpose of erecting a hotel. The six mentioned were also all of the directors of the Virginia Hotel Company, which was formed, as a legal medium, through which the object of the understanding was to be accomplished. The property was encumbered by several mortgages. Some, or

all, were in default, and one, at least, was under foreclosure. As part of the undertaking appellants and all other parties in interest desired to refinance the property before conveying title thereto to the corporation. Whereupon title to the premises were conveyed by Sale to one J. Irwin Stout. The latter is what is commonly designated in the realty trade as a "straw" man. Freihofer and Simkins, the latter a member of the Philadelphia bar, were entrusted with the arranging of a first mortgage loan of $300,000 on said property, in order to satisfy the existing encumbrances thereon. Finally, arrangements were made to secure this loan from the respondent. Stout executed the usual New Jersey bond and mortgage. But as a condition precedent to the granting of this loan respondent demanded that it should receive a collateral bond of the real parties, the parties in interest, to further secure the loan. For obvious reasons it would not grant a loan of $300,000 on the bond of a straw man. This condition was communicated to all of the parties in interest at a meeting of the directors of the corporation. The parties in interest and all of the directors of the corporation were the same persons. They accepted the condition precedent imposed by the respondent. Mr. Simkins' offices caused the collateral bond in issue to be prepared.

The original bond (*Exhibit C-3*) was submitted to the court and was inspected. A photostatic copy thereof is appended to the record. The bond purports to be the bond of all the six parties in interest. It specifically names each of them as the joint and several obligors. This typed form was submitted to appellants for their respective signatures. There is a marked divergence of proof as to the time, place and manner that the alleged bond was executed by appellants. The latter, however, strongly urge that it was their definite understanding and agreement that their respective signatures were placed upon the bond upon the condition that it was not to be delivered to respondent unless all others in interest, having assented to do so, likewise signed it. Upon being so assured, they claim, they executed the bond and gave it to Freihofer, who appeared in person to obtain, and in fact did

obtain, their respective signatures; and subsequently it was delivered to respondent by either Simkins or his assistant. Let it be marked that the bond which appellants signed contained among others the following condition:

"\* \* \* Upon the condition that the obligors herein should execute and deliver to it this collateral bond, whereto the said obligors, all of them being beneficially interested in said transaction, have assented."

This collateral bond, in fact, was not signed by all in interest or by all beneficially interested assenting; Isaac D. Hetzell did not sign it. The testimony disclosed that in the regular course of respondent's business and prior to the actual advance of any moneys on the loan it was ascertained by them that although the name of Isaac D. Hetzell, as one of the obligors was typed in the body of the bond, his signature thereto was missing. An employe of respondent's collateral loan department submitted the bond, unsigned by Hetzell, to his superior, a second vice-president and treasurer of the respondent company, and the latter without ado and without any inquiry or notification to any of the other parties in interest, including, of course, appellants, summarily disposed of the matter by telling the employe "to go ahead and advance the money."

Notwithstanding the cross-examination of Mr. Simkins to create an impression to the contrary, i. e., that appellants had knowledge of Hetzell's refusal to sign the bond before it was delivered to respondent, we are of the opinion that it is rather clear, in fact it is not seriously challenged, that it was not until after the death of Freihofer, some two or three years subsequent to the date of the bond in question, which date is stated in the opinion of the learned vice-chancellor as June, 1932, that appellants found out that Hetzell had not signed the bond.

Appellants contend that since the bond was executed by them conditionally and since they never delivered the bond in question to the respondent, either by themselves or by any other authorized person, that, therefore, they are not liable

thereon. Or, stating it as was a like contention stated in *Black* v. *Shreve, 13 N. J. Eq. 455,* it is, that their bond upon which their liability depends, was never, in the legal sense of the word delivered to the complainants, and for that reason it never had legal vitality, though signed by them. Among the other contentions made by appellants it is also urged that, under the facts and circumstances of the instant case and the law applicable thereto, respondent was put on notice; it was charged with the duty of making inquiry and that the exercise of ordinary diligence and understanding would lead them to the knowledge of the requisite facts. *Todd* v. *Exeter Land Co., 104 N. J. Eq. 431.*

Respondent contends that this case turns, as it views it, on two disputed questions of fundamental fact. They are as follows: (1) Was there an agreement between complainant and appellants, that the loan would not be made unless all six persons, including Hetzell, signed the bond? (2) Was there a conditional delivery by appellants, which makes the bond unenforceable as to them? It answers these questions by saying that each was answered in the negative by the court below. That this appeal is nothing more than a request that this court substitute its judgment for that of the vice-chancellor, who heard the witnesses, observed their demeanor on the stand and was, therefore, in a better position to pass upon their credibility.

It is true that, on an appeal from a decree of the court of chancery, great weight is given to a finding upon a question of fact, for the reasons stated by respondent, but this rule imposes no restraint upon this court to ascertain, by investigation and analysis of the evidence whether the general finding is consistent therewith. *Naame* v. *Doughty, 109 N. J. Eq. 535.* Although the learned vice-chancellor fully stated his findings of fact and recognized, amply cited and discussed the law applicable thereto, nevertheless, we are of the opinion that, by reason of an erroneous effect given to the testimony, he reached a wrong result.

It seems to us that the answer to the determinative question, already indicated, as being herein involved, depends

as to whether Freihofer was a general or special agent of the appellants in the premises.

The learned vice-chancellor found as a fact: (a) that the bond in question was delivered to complainant and that prior to the delivery there was no promise made by complainant that it would not accept the bond until and unless all six co-adventurers had executed it, but that the most complainant had said was that it would not accept a "straw" bond and wanted a bond of the parties in interest; that (b) the co-adventurers all desired to induce complainant to advance the $300,000 and that that sum was advanced to the co-adventurers by complainant and was used by them to discharge the mortgage encumbrances then outstanding and that they were discharged by the use of these moneys, and (c) *Freihofer was the agent of the defendants in the delivery of the bond to the complainant and that Freihofer did not communicate to complainant any condition connected with the delivery of the bond, nor did Simkins, the attorney for the co-adventurers, ever communicate to complainant any such condition,* and that complainant knew of no such condition, and (d) the mere fact that Hetzell did not sign the bond, even though he was named in the bond and a space reserved therein for his signature did not put complainant on notice of any conditional delivery, as the bond was delivered by the obligors themselves, through their agent.

On the finding aforesaid, he held that it did not become the duty of the respondent to make inquiry of the obligors as to any conditions attached to the delivery of the collateral bond, since the obligors delivered the bond in person through their chosen representatives. He relied on *Ordinary* v. *Thatcher, 41 N. J. Law 403,* wherein Chief-Justice Beasley, *inter alia,* held: "* * * inasmuch, however, as the bond in the present case was not delivered by the sureties through any intermediate agency, but by their own hands, the doctrine of estoppel is not pertinent." And further commenting on the case of *Ordinary* v. *Thatcher, supra,* said: "The principle thus announced by the chief-justice is one of the principles upon which I base my conclusions that there was no condi-

tion imposed on the delivery which was binding upon the complainant because the bond as delivered to the complainant was delivered by sureties themselves, *i. e.,* by Freihofer, their agent; in other words, by their own hand."

Now, it is stoutly contended that this is a contradiction in terms. We also think so. It appears to us that it is one thing to say that an instrument is delivered by one as your agent and that it is quite another and different thing to say that it was delivered by your own hand.

Let us, however, consider the case from the viewpoint that it may be inferred that it was considered by the vice-chancellor that when he referred to the obligors as co-adventurers he meant that they were co-partners. It is of course true that there can be a partnership to a single transaction (*47 C. J. 650 § 41*) ; and as a general rule, each partner, acting within the scope of the partnership business, is, by virtue of the partnership relation, authorized to act as the general agent for and bind the firm and his co-partners as to all matters coming within the scope of the business of the firm in the same manner and to the same extent as if he had full power of attorney from all the co-partners. *47 C. J. 826 § 290.* See, also, our Uniform Partnership act. *P. L. 1919 ch. 212 p. 481.* Nevertheless, the mere characterization of these obligors as co-adventurers is not sufficient, without further proof, to constitute them partners. While it is true that the proofs indicate that each obligor had a fractional tenth interest, nevertheless, it does not appear that the association of the obligors was ever intended to, or did, assume a partnership relationship. Their conduct in the premises tends to indicate, rather conclusively, that they intended to operate through the medium of a corporation. The Virginia Hotel Company was organized for that purpose. Throughout this undertaking, from its very beginning, they sought, apparently, to avoid, until they conditionally signed this bond, personal liability. It is conceded that at that time Freihofer and Hetzell were men of wealth. The financial responsibility of Sale is not made to appear. But whatever may have been his financial responsibility, he conveyed, for all parties, to

Stout, an admitted "straw" man. All of the obligors including Hetzell, constituted all of the directors in interest, and they were all the directors of the company. It was unquestionably a closed corporation. They met as directors of the company. The condition imposed by respondent for the collateral bond was submitted to the parties in interest at a meeting of all the directors of the company. It is admitted that the land in question was in fact conveyed to the corporation. Proof of a partnership relationship between the parties is lacking; it clearly is not present in the instant case.

We are of the firm opinion that Freihofer was only a special agent. The law, therefore, as laid down in *Black* v. *Shreve, supra,* is controlling, namely that:

"If those who signed it limited the power of the agent who procured the signature to deliver it, by declaring that they would not be bound unless all signed, it makes no difference whether the agent ever communicated that limitation to the complainant or not. No principle of law is better settled than that one who claims through a special agent takes the risk of this want of power."

See, also, *State Bank* v. *Evans, 15 N. J. Law 155.* And this rule of law in no way countervails the case of *Ordinary* v. *Thatcher, supra,* namely, that there may be a limitation of authority to deliver and that the power to deliver may be conditionally conferred, and if delivery is made in violation of the condition imposed—it is not a legal delivery. We do not understand the *Ordinary* v. *Thatcher Case* as undertaking to overrule this principle of law. The *Thatcher Case* went on the ground that delivery of the guardian bond was made by the sureties themselves.

And moreover, we are of the further opinion that there is merit to the further contention of the appellants that under the facts and circumstances of the instant case, the law made it obligatory on the part of the respondent to make inquiry.

In the case of *Todd* v. *Exeter Land Co., supra,* this court held:

"It is well settled, that whatever puts a party upon inquiry, amounts in judgment of law to notice, provided the inquiry

becomes a duty, and would lead to the knowledge of the requisite facts, by the exercise of ordinary diligence and understanding. *Hoy* v. *Bramhall, 19 N. J. Eq. 563."*

The facts in this case have been fully stated. It appears to us that they clearly demonstrate that when this collateral bond was presented to the respondent by a special agent, without Hetzell's signature, and all other circumstances of the case at bar, if it had exercised ordinary diligence and understanding it would have, without difficulty, ascertained the true facts. The use of the ordinary methods of communication such as telephone or telegraph, particularly the former, would have given it the necessary explanation almost as quickly as it took respondent's vice-president to examine the bond and tell his subordinate "to go ahead and advance the money." Respondent did not exercise the required diligence and understanding in the premises. It utterly failed to perform its bounden duty. It must suffer the consequences.

The decree in so far as it declares the collateral bond a valid and binding obligation of appellants is reversed, with costs.

The record shall be remitted to the court below to be treated in accordance with the views herein expressed.

Appeal of Stacy H. White—

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, JJ. 13.

Appeal of Ernest Schwehm—

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.