JAMES   O'DOWD,   PLAINTIFF-RESPONDENT,   v.   UNITED
STATES FIDELITY AND GUARANTY COMPANY, A COR-
PORATION, DEFENDANT-APPELLANT.

Argued October 22, 1936—Decided January 22, 1937.

For the appellant, *McDermott, Enright & Carpenter* (*James D. Carpenter, Jr.,* of counsel).

For the respondent, *John W. McGeehan, Jr.*

The opinion of the court was delivered by

PERSKIE, J.   The basic question involved in this cause is whether, under the proofs, the insurer who, under its policy of indemnity with its assured defended the latter (in a suit brought by a third party against the assured for resultant damages for personal injuries sustained while not employed by assured) unconditionally, without obtaining from its assured either an agreement of non-waiver, or without serving a notice of disclaimer upon assured, or without making a reservation of its rights in the premises, waived its right, and is estopped thereafter, to deny liability in a suit against it for the payment of the judgment recovered by the third party against the assured or whether the insurer, under the stated circumstances and after the third party has recovered a verdict against the assured, may still, for the first time, serve a notice of disclaimer upon its assured and thus escape the payment of the judgment based on the verdict so recovered.

The pertinent facts are not in dispute.   Respondent, who was the plaintiff below, was employed by Halback & Company.   The latter had a contract for the construction of the stairways in the National-Newark and Essex Bank Building, Newark, New Jersey, with Karl W. Koch, Incorporated (hereafter referred to as Koch) who had the contract for the steel work for said building.   On February 7th, 1930, respondent was on the thirteenth floor of said building, and while

"assisting in moving iron parts for such stairways from an elevator on the floor of said building" was struck by a drift pin negligently dropped by an employe of Koch. The latter reported the accident to appellant on March 12th, 1930; report form is dated March 13th, 1930. On November 14th, 1930, respondent sued Koch and Starret Brothers, Incorporated (general contractors), for the resultant damages for the personal injuries which he thus sustained.

Appellant covered Koch on this and other buildings with a contract of indemnity (not exceeding $20,000 for each person) in which it agreed "to settle and defend * * * all claims resulting from liability imposed upon the assured by law, for damages on account of bodily injuries * * * accidentally suffered by any person * * * other than employes of the assured."

This contract or policy, which was in full force and effect, also contained, *inter alia,* the following provisions: "Agreements." "Defense." "II. To defend in the name and on behalf of the Assured any suit brought against the Assured to enforce a claim, whether groundless or not, for damages on account of bodily injuries including death at any time resulting therefrom accidentally suffered or alleged to have been suffered by any person or persons other than employes of the Assured." "Exclusions." "This policy does not cover loss * * * Condition A. * * * (3) Suffered by any person while in or on any elevator or hoisting device, or in any elevator well or hoistway, or while entering upon or alighting from any elevator or hoisting device."

Koch forwarded the summons and complaint to appellant. The latter accepted same and took charge and control of the suit. Counsel for appellant undertook and did, in fact, direct the preparation of the defense thereto and actually tried the case. It is interesting to observe, in the light of appellant's claims that it did not know prior to trial that the accident happened at a place excluded under paragraph 3 aforesaid, that appellant demanded and received additional particulars to amplify the allegation in the complaint that respondent was struck while "at work upon the thirteenth floor of said premises *in and near said shaft."*

Respondent's answer (7) to the demand for particulars disclosed that "Plaintiff was working at the inner edge of the elevator shaft, which would be practically in line with the outer wall of the center of said building on the Commerce street side, the said elevator shaft extending along said wall, the inner part being contiguous to the floors and the outer three sides extending outward from said wall. By the walls of the building is meant the point where the brick walls were later erected, the skeleton of the side of the said building only being present at the time of the accident."

We learn that the Travelers Insurance Company, who carried the workmen's compensation insurance, made a claim upon Koch for reimbursement of payments made to respondent; that appellant received notice of the fact in May of 1930 (*Exhibit P-6*) and that this exhibit contained a statement that the accident occurred while respondent was unloading material from an elevator hoist; that the letter (*Exhibit P-7*) of the superintendent of claims of appellant addressed to Koch, under date of June 8th, 1931, indicates that appellant was not in ignorance of the claim made by respondent incident to the place and happening of the accident. The trial had begun on September 22d, 1932, and on the second day thereof plaintiff testified as follows: "*Q*. You were partly on the lift when you got hit? *A*. Yes. We were taking the end of the stringer out. It was a long one. We had to move it out so we could get it down. *Q*. Do you know how far you had gotten the one end off the floor when this happened? *A*. We were just getting it right off the lift onto the plank, right onto the plank, I was partly on the lift yet. I had one foot on the lift. *Q*. And one foot where? *A*. On one of the planks that was between the lift and the buildings." That employes of Koch, three in number, corroborated plaintiff's claim. That counsel for appellant then and there knew that the names of these employes were not on the list that Koch supplied to counsel for appellant on June 9th, 1932, in response to a demand made on Koch, on June 6th, 1932, to furnish a list of all its employes who were on the job at the time of the accident. The trial continued until September 27th, 1932. The jury returned a verdict for $65,000. The

general contractor apparently bought its peace; it is not here involved. A rule to show cause was obtained for Koch on the ground that the verdict was excessive and it was reduced to $45,000. Between the day of the allowance of the rule, October 3d, 1932, and the disposition thereof, October 28th, 1932, counsel for appellant, for the first time, did, on October 14th, 1932, orally and on October 27th, 1932, in writing (*Exhibit D-22*) disclaim liability for appellant to its assured.

The respondent caused execution to be issued and because of the insolvency of the assured it was returned unsatisfied. Thereafter, on June 19th, 1934, pursuant to chapter 153, *Pamph. L.* 1924, *p.* 352, as amended by chapter 194, *Pamph. L.* 1931, *p.* 490, and pursuant to provision of the policy (Insolvency conditions providing that the insolvency or bankruptcy of the assured shall not release insurer from paying damages for injuries sustained by any person during the life of the policy) respondent sued appellant for the balance due him on said judgment. Appellant's answer denied liability; it set up several defenses which were, in substance, the reasons stated in its disclaimer of liability to its assured before the disposition of the rule to show cause. They were, in effect, as follows: (1) the accident was not covered because it happened at a place within the exclusion clause of the policy; (2) that assured failed to give prompt notice and details of the accident; (3) that assured failed to properly co-operate in that it failed to give the names and addresses of all assured's employes who were actually on the job or who knew about the accident; (4) that assured did not pay the actual payments due it and as a result thereof appellant recovered a judgment against Koch in Baltimore City Court, Baltimore, Maryland, on March 19th, 1932, for $102,803.41 on which Koch paid $15,000 and that it was entitled to set off the balance of $87,803.41 against respondent; (5) that appellant was not liable in the premises.

Respondent moved to strike the defenses. The trial judge struck the fourth defense but refused to strike the others. In doing so the trial judge construed the defense and the exclusive provisions of the policy. He said:

"It is my conclusion that the rational interpretation of this provision is that the policy excluded from coverage as against loss where the assured's liability is established by reason of the injuries suffered in the manner contained in paragraph 3 and damages recovered by reason of any suit based on such injuries, and that the policy does not mean that the obligation of the assured (*sic*) under paragraph 2 of the agreement entitled 'Defense' is excluded from coverage by the wording contained in Condition A under title of 'Exclusions.'"

Reply, rejoinder and sur rejoinder were filed and these pleadings presented the issue claimed by respondent, and denied by appellant, that the latter by its conduct, in the preparation and defense of the tort action against Koch without disclaiming liability, until after verdict rendered, waived or is estopped from denying liability in the present action.

Appellant's motion for a nonsuit was denied. At the conclusion of the entire case counsel for the respective parties each moved for a directed verdict.

Counsel for respondent argued on the basis, but not so conceding, that respondent was at the time of the accident at a place within the exclusion clause; and that Koch did fail to properly co-operate with appellant, nevertheless, under all the undisputed proofs, the latter waived such defenses and was estopped from asserting them in this case; and that since the facts as to waiver and estoppel were not in dispute no jury question was present.

Counsel for appellant, among other things, said:

"I realize that Mr. McGeehan has said, fortunately, that *there is no dispute in the facts. Either the defendant is liable or not liable. I see no question for the jury.* By making the motion, I have, I am agreeing, as some of the courts hold, that you may decide this cause as a matter of law. I see no questions of fact here because the facts are wholly undisputed. It is true that this man was partly on and partly off the lift. That brought him as a matter of law within the exclusion clause. Second, it is true that I learned early in the trial, when these four Koch witnesses came in and testified that they were working directly above in the area where the plaintiff was and admitted dropping the drift pin. Those names

had been concealed from us by Koch & Company." (Italics supplied.)

The trial judge concluded, on the assumption that the accident occurred at a place within the exclusion clause and that there was lack of co-operation on the part of the assured, that the undisputed facts disclosed that appellant waived and was estopped from raising these defenses. He then granted respondent's motion for a directed verdict against appellant in the sum of $20,000, plus interest, totaling $24,183.34. It is the judgment based on that verdict that is now challenged.

*First:* Did the learned trial judge err in granting respondent's motion for a directed verdict? We think not. The evidence is plenary to support appellant's knowledge of the facts as to how and where the accident occurred, and for which respondent sued its assured for the resultant damages he sustained. That information was known to it, as already pointed out, from several sources. But whatever may be said as to the information thus known by it, appellant unquestionably had the exact information, which it claimed was denied it, on the second day of the trial. What, if anything, did it then do about it? Nothing. It elected to stand mute when it should have spoken. But it is urged that it should have been permitted to speak in the instant suit because it did, in fact, disclaim liability. That disclaimer, however, admittedly came after the damage or injury was done; verdict had already been rendered against its assured; the disclaimer came too late. Counsel in charge for appellant frankly testified that he knew nothing about the exclusion clause in the policy, or any other provision thereof save that there was a limited liability thereunder of $20,000 for any one person injured, until after the verdict had been rendered against Koch. Little wonder that this was so. His client did not supply him with a copy of the policy until after trial. Nor did his client supply him with the facts concerning the judgment which it had recovered in Baltimore until after the Koch trial. We are not to be understood by what is here written as in anywise criticising counsel; he did all that he could have done with the information furnished him by his client.

We have held that whatever puts a party on inquiry amounts in judgment of law to notice, provided inquiry becomes a duty, and would lead to the knowledge of the requisite facts, by the exercise of ordinary diligence and understanding. *Hoy* v. *Bramhall*, 19 *N. J. Eq.* 563; *Todd* v. *Exeter Land Co.*, 104 *Id.* 431; 146 *Atl. Rep.* 303; *The Real Estate-Land Title, &c., Co.* v. *Stout*, 117 *N. J. Eq.* 37, 45; 175 *Atl. Rep.* 128. Appellant obviously had a copy of its policy with its assured for finally one did get into the hands of its counsel. It surely is charged with knowledge of the facts therein contained; and that knowledge is charged to it from the day the policy was issued to its assured. Appellant also apparently had knowledge of the fact that it had recovered a judgment against Koch in Baltimore some six months prior to the Koch trial. Insurance carriers are not unfamiliar with the preparation for trials. It is a common experience with them. It chose, however, not to communicate this information to its counsel. It must necessarily suffer the consequences. If the conduct of appellant under the circumstances in the case at bar does not constitute a waiver and operate to estop appellant it is difficult to visualize circumstances that would so constitute and operate. *Cf. Cook* v. *Preferred Accident Insurance Co.*, 114 *N. J. L.* 141; 176 *Atl. Rep.* 178, and cases therein cited. Appellant cannot complain because it has extended, by its own conduct, the scope or limitation of its original undertaking. *Caiola* v. *Aetna Life Insurance Co.*, 13 *N. J. Mis. R.* 845; 181 *Atl. Rep.* 524; *affirmed,* 116 *N. J. L.* 381; 184 *Atl. Rep.* 736. And appellant's liability on its undertaking, so extended, inures to the benefit of "any person or persons" under the insolvency provision of its policy based on the statutes aforesaid. Respondent—a third party, is clearly entitled to the benefits thereof. *Horn* v. *Commonwealth Casualty Co.*, 105 *N. J. L.* 616; 147 *Atl. Rep.* 483; *Cook* v. *Preferred Accident Insurance Co., supra.*

*Second:* It is strongly urged that appellant's representation of Koch without disclaimer did not harm or prejudice Koch: that it was obliged, as decided by the learned trial judge below, to defend its assured whether respondent's claim was groundless or not.

The suggestion that appellant's defense of Koch did or did not prejudice or benefit the latter, it seems to us, is beside the point. Did its action in the premises constitute a waiver and estoppel? It will not do for appellant to say that it defended its assured merely because it was obliged to do so and not because, in so doing, it recognized any financial responsibility. There is no rational foundation for such a claim. We find no evidence to that effect.

The trial judge held that appellant was defending "presumably under a liability to pay any verdict that was rendered." That is clearly so. Under the proofs exhibited, it could not be otherwise. Counsel for appellant could not very well have defended on a condition which concededly was altogether unknown to him both during the preparation for and actual trial of the case. He did not so defend. There is proof to that effect. That proof is that appellant defended because it was subject to liability of $20,000 in the premises. Counsel for appellant directed the preparation of the defense and conducted the trial of the cause on that basis. If it were otherwise, as it is now urged, able counsel surely would have so indicated either in the pleadings or during the progress of the trial.

*Third:* The set-off was properly stricken. And it was not error to exclude the exemplified copy of the judgment roll of the Baltimore judgment upon which the set-off was based. Respondent did not sue as an assignee of the assured. Subject to the validity of the policy, respondent sued in pursuance of a right given him to do so by the insolvency provision of the policy which is based on the statutes aforesaid. We have held that respondent's right to sue, under such circumstances, is an independent right. *Dziadosc* v. *American Casualty Co.,* 114 *N. J. L.* 137, 141; 176 *Atl. Rep.* 150. The whole theory of the right of set-off "rests in spirit and in reason upon the avoidance of circuity of action by compelling the adjustment in one suit of all such mutual demands as are counter-claims." *Naylor* v. *Smith,* 63 *N. J. L.* 596, 598; 44 *Atl. Rep.* 649. And the simple test of the mutuality of the demand is whether the defendant could recover against the plaintiff in an independent action. "* * * When, therefore, the legislature

has created an action that does not admit of this mutuality of adjustment, it has created one to which neither the spirit, the reason nor the statute of set-off applies." *Naylor* v. *Smith, supra.*

*Fourth:* Counsel for appellant suggests that he had no ethical right to abandon his client's defense when he saw and heard three employes of Koch testify in support of plaintiff's claim, especially so when he was told by Mr. Brown, secretary of Koch, that their names were not on the list furnished by Koch because of the death of their foreman who was on the job and that they (Koch) had probably forgotten about these employes. The question of the ethical conduct of appellant's counsel has no place in this cause; it is not in issue. It is not even questioned.

We have carefully considered all other points argued and conclude that they merit no further discussion.

Judgment is affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, CASE, BODINE, PERSKIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, COLE, JJ. 12.

*For reversal*—HEHER, HETFIELD, JJ. 2.