GEORGE F. MARSDEN, general guardian, &c., respondent,

*v.*

HOWARD WHITE et ux. and the NEW JERSEY BUILDING LOAN AND INVESTMENT COMPANY, appellant.

[Submitted March 26th, 1906. Decided November 19th, 1906.]

Marsden, having a mortgage which was a first lien, executed a release by which he surrendered his priority of lien in favor of the mortgage of a building and loan association, which was subsequently foreclosed without making Marsden a party, and the property bought in by the association, and conveyed, with general covenants, to White, who improved it. Marsden subsequently filed a bill to foreclose his mortgage, making White and the association defendants. White, by way of cross-bill against the association, set up the actual and threatened breach of his covenants;

arising from the existence and foreclosure of the complainant's mortgage, and prayed that the association be decreed to pay said mortgage debt. From this decree which was entered against it the association appealed.— *Held,* that such decree deprived the association of the benefit of its release from the complainant's mortgage, and that the doctrine of avoidance of circuity of action is not to be applied in favor of one defendant in a suit in equity if the result is to deprive another defendant of a substantial defence to the claim of the complainant.

On appeal from a decree advised by Vice-Chancellor Stevens.

*Mr. Barlon B. Hutchinson,* for the appellant.

*Messrs. John S. Applegate & Son,* for the respondent White.

*Mr. John E. Foster,* for the respondent Marsden.

The opinion of the court was delivered by

GARRISON, J.

This suit was begun in the court of chancery by the filing of a bill to foreclose a mortgage for $500, which was a first lien upon the mortgaged premises. The bill was filed by George F. Marsden, general guardian of Hester H. Marsden, an infant. Howard White was made a defendant because he owned the mortgaged premises, and the New Jersey Building Loan and Investment Company was made a defendant because of a purchase-money mortgage made to it by White, to whom the association, after buying in the property upon the foreclosure of a mortgage held by it, had conveyed the premises, with covenants, that were broken by the existence of the complainant's mortgage. The decree of the court below is not that the mortgaged premises be sold to pay the amount due on the complainant's mortgage, but that the New Jersey Building Loan and Investment Company pay to the complainant the principal and interest of his said mortgage, and that if the same be not paid within thirty days the complainant or White may apply for execution against the said building company, and for such other order in respect to the land mortgaged as they may deem proper. From

this decree the New Jersey Building Loan and Investment Company has appealed.

The situation that led to the making of this decree cannot be gathered from the pleadings, which are at radical variance with the proofs upon material points. The case made by the proofs is this: In 1898 Isabella C. Marsden was the owner of a lot of land in Monmouth county, upon which, on January 17th of that year, she executed a mortgage to Newton and A. T. Doremus to secure the sum of $500, in which mortgage her husband, George F. Marsden, joined. This mortgage was given to the Doremuses to secure a grocery bill owing to them by the Marsdens. Subsequently George F. Marsden, who was general guardian of his infant daughter, Hester, took $500 of the infant's money and paid this bill to the Doremuses, and took from them an assignment of the $500 mortgage to himself, as such general guardian of his daughter. This was on February 23d, 1899. Later in 1899 Isabella desired to obtain a loan of $4,000 from the New Jersey Building Loan and Investment Company, to be secured by a first mortgage on her said property. Her husband, to aid her in obtaining such loan, executed, as the general guardian of his daughter, Hester, a release under seal, by which he surrendered to the said building company, as mortgagee, the priority of the mortgage he held to secure his daughter, and covenanted that said $4,000 mortgage should be a prior encumbrance upon his wife's property. This release was placed on record and the mortgage for $4,000 executed and delivered to the building company, and by it was subsequently foreclosed, without making George F. Marsden, general guardian, whose assignment had not been recorded, a party thereto. The decree entered in this foreclosure established the debt due to the building company at $4,228, to pay which the property was sold and bought in by the company for $3,000, and subsequently sold and conveyed by it, by a warranty deed, with covenants against encumbrances and for quiet enjoyment to Howard White. The consideration for this conveyance was $4,500, of which $1,700 was paid in cash and a purchase-money mortgage given for $2,800, which has since been reduced by payments to $1,600 and assigned to one Scudder, with a stipulation by

the mortgagee, the building company, that $1,600 of the mortgage debt remained unpaid. White, who has been since in possession of the property, has improved it at a cost of $2,500.

To the bill now filed by Marsden, general guardian, to foreclose his $500 mortgage, White has obviously no defence, and his answer sets up none. His defence, if such it can be called, is that the defendant, the New Jersey Building Loan and Investment Company, should be compelled in this suit to make equitable amends for the actual and threatened breach of the covenants contained in its conveyance to him by paying off the complainant's mortgage, the existence of which constitutes one of the said breaches and the sale under which would precipitate the other. As set forth in White's cross-bill, the grounds of this claim to equitable relief are—*first,* because the company conveyed to him with a covenant against encumbrances, which was broken when made by reason of the existence of the complainant's mortgage; *second,* because the company warranted the title it conveyed and covenanted for quiet enjoyment, which will be broken if White is evicted under a foreclosure sale; and *third,* because he was induced by false representations made to him by the building company to believe that complainant's mortgage had been satisfied or extinguished. The facts on which the first and second of these contentions rest are established by the production of the deed to White from the company. As to the third, the averment of the cross-bill is that the defendant—that is, White—was informed by the New Jersey Building Loan and Investment Company that said mortgage had been paid and satisfied; that the said company had made the holder of said mortgage a party to its foreclosure suit and that all rights under said mortgage had been cut off, and that said mortgage was not a lien upon the premises to be conveyed to him by said company, and that relying upon these statements he omitted to have any search made and accepted the deed of the New Jersey Building Loan and Investment Company with a covenant against encumbrances, and that he had not instituted any action at law for the breach of said covenant because his counsel advised him that he had a complete defence in the present suit in equity. Not one of these

allegations of the cross-bill is supported by a syllable of proof, although in its answer thereto the building company, in addition to a categorical denial, quoted in full a letter written by said White to the secretary of the said defendant company, at about the time it took its $4,000 mortgage, which showed that it was White who had made the arrangement by which the mortgage of the complainant was postponed to that of the building company, and that in this letter was enclosed the release of which mention has been made. In its answer the building company submits that White's remedy is at law upon the covenant set forth in his cross-bill, and prays the benefit of a demurrer. Against this demurrer White's cross-bill was protected by its allegations of fraud and misrepresentation, but when, upon the coming in of the proof, those allegations dropped out of the case, the cross-bill stood upon no higher ground than it would have stood upon demurrer with such allegations left out. The issue, however, went to trial before the vice-chancellor, when the whole case made by White, plus the admissions of his cross-bill and minus its unsupported charges, was that, knowing of the existence of the complainant's mortgage, he took from the building company the conveyance for the mortgaged premises with full covenants, and has since expended money in its improvement. This last circumstance, which did not appear in the cross-bill, had apparently conclusive weight with the learned vice-chancellor, and led him to advise that the complainant's decree be not that the mortgaged premises be sold to pay his debt, but that the defendant, the New Jersey Building Loan and Investment Company, pay the complainant the principal and interest of his said mortgage and so make good its broken covenant with White against encumbrances and avert the breach of its covenants against eviction. This result is reached upon the ground that as the building company stands toward White as the principal debtor for the complainant's mortgage, and as White's legal measure of damage against the company in case of eviction is what he paid for the property, with interest, which will not repay what he has expended for improvements, White's equity is to have the company pay the complainant's mortgage and thus avert a fore-

closure sale of the property, and that this equity of White's is superior to the company's equity to have the complainant's mortgage satisfied by a foreclosure and sale of the mortgaged premises and a distribution of the proceeds as if the company's mortgage were still existent, White taking the company's share of such proceeds, the difference between which and the amount he paid for the property, with interest, would be the measure of his damage for the breach of the company's covenants; hence the decree by which the company is required to pay to the complainant the amount of his mortgage in full without regard to what the complainant would receive on his said mortgage out of the proceeds of a sale of the mortgaged premises.

In this result and in the reasoning by which it is reached we are unable to concur, not only because, as the vice-chancellor realizes, it ignores the right of the company to respond to its broken covenants by the payment of the legal measure of damage, but also because it ignores the fact that the complainant had surrendered the priority of his mortgage to that of the company by a release which the company has a right in equity to set up and enforce in this suit, if it is to be called upon by a personal decree to satisfy the mortgage of the complainant.

The equity of the defendant White, which was adopted by the vice-chancellor, rests at bottom upon the doctrine of the avoidance of circuity of action, of which it was said in the case of *Brewing Company* v. *Clement, 59 N. J. Law (30 Vr.) 48:* "Avoidance of circuity of action is at best a doctrine of convenience—a secondary equity, so to speak—and not to be resorted to in the face of either legal rule or substantial right." The present case, it will have been observed, is not the ordinary one where a covenantee whose covenant has been broken is entitled by force of the doctrine in question to credit his legal measure of damage on his unpaid purchase-money. If the building company were seeking to enforce the mortgage it took back from White, such deduction would be made in order to avoid circuity of action, and the same is true if such mortgage was being enforced by its assignee, who would then have his action over against the building company, neither of which, however, is the case here, where the contest is, so to speak, triangular, the com-

plainant having a right to foreclose against White, White, having a legal right against the company and the company having a right to enforce its release against the complainant, if it is to be called upon to satisfy his mortgage in this suit. This last-mentioned circumstance militates conclusively, in my opinion, against the applicability of the doctrine of the avoidance of circuity of action to the present situation. By such doctrine, which is not so much a principle of equity as it is a dispensation from law, a mortgagor-covenantee, who has a legal action for breach of covenant against his mortgagee-covenantor, is permitted, when brought by the latter into a court of equity, to credit his legal measure of damages upon such complainant's mortgage; in such case the amount of the mortgagee's loss and the legal measure of the mortgagor's damages are equal, and it is this equality that makes the equity in question. But such doctrine has obviously no application to a case where the covenantor, not being the mortgagee and not having brought the covenantee into a court of equity, has a legal stipulation with the complainant in such suit by force of which the sum that will satisfy such complainant's mortgage may be less than the principal and interest thereof and less than the legal measure of the covenantee's damages. In such case the equality that makes the equity is lacking, hence to apply the rule in avoidance of circuity of action is to deprive the covenantor of the benefit of his legal stipulation with the complainant. If, for instance, the stipulation in the present case had been that the building company might satisfy the complainant's mortgage for fifty cents on the dollar, a decree that the building company, in order to relieve White from proceeding at law on his covenant, must pay the complainant's mortgage dollar for dollar, would be manifestly inequitable. That such case, upon principle, would not be different from the one before us appears from the opinion of the learned vice-chancellor, which states that if the $4,000 mortgage be considered as still in existence, the proceeds of a sale under the complainant's mortgage would go to pay, first, the principal and interest of the said $4,000 mortgage, and second, the complainant's mortgage, which would be thereby discharged as an encumbrance on the mortgaged prem-

ises, even though the amount of such proceeds was less than the amount due on said mortgage. Thus effect would be given in this suit to the complainant's release of the priority of his mortgage in favor of the building company. When, however, it came to the making of a decree, the learned vice-chancellor either unduly minimized the rights of the building company under the complainant's release or else did not recognize that by compelling the company to pay the principal and interest of the complainant's mortgage he was in fact depriving the company of all benefit of such release. I am unable to brush aside this right of a defendant to set up as against a complainant a legal compact between the parties beneficial to such defendant. Such is always the right of every defendant, hence I distrust the soundness of any result by which one defendant is deprived of its undoubted right in order that another defendant may have dispensation in equity from proceeding upon his remedy at law against such defendant. If the doctrine of avoidance of circuity of action produces this result then such doctrine is thereby demonstrated to be inapplicable. If the allegations of White's cross-bill as to misrepresentation had been sustained, a different case might have been presented. The case here, however, in so far as it depends upon the covenant against encumbrances, is simply that White took his conveyance from the building company and made improvements, knowing of the existence of the complainant's mortgage, against which he was protected by a covenant that was broken when made. The exact amount for which the grantee could hold his grantor was thereby liquidated, hence it seems clear to me that no improvement such grantee chose to make upon the property could impose upon his grantor any greater burden. This is also true with respect to the warrant of title and the covenant for quiet enjoyment. The law prescribes just what one party may recover from the other for the breach of these covenants, and this measure of redress by legal intendment forms part of the contract of the parties, so that the mere existence of such a covenant implies that the parties have agreed with each other, the one to accord and the other to accept, upon the happening of a certain event, a known measure of damages. Such measure of

damages has not only, as pointed out by the·learned vice-chancellor, been established by the decisions of our supreme court from an early period (*Stewart* v. *Drake, 9 N. J. Law (4 Halst.) 139; Holmes* v. *Sinnickson, 15 N. J. Law (3 Gr.) 313; Morris* v. *Rowan, 17 N. J. Law (2 Harr.) 305; De Long* v. *Spring Lake Co., 65 N. J. Law (36 Vr.) 10*), but has also, in principle, been followed by this court in a case where the land had been appreciated by improvements, viz., *Gerbert* v. *Trustees, 59 N. J. Law (30 Vr.) 160.*

That the court of chancery is bound by the legal rule thus established, at least in the opinion of Vice-Chancellor Van Fleet, is shown in *Post* v. *Stiger, 29 N. J. Eq. (2 Stew.) 554,* where he says: "Its breach was coeval with its existence, and the complainant's right accrued as soon as the covenant was made. His damages were certain and fixed, being limited inflexibly to the consideration paid and interest."

Such was the legal position of these defendants at the time the company conveyed to White. Since that time the covenantor, neither alone nor acting in concert with the covenantee, has done anything to alter this legal situation, and nothing that the covenantee acting alone has chosen to do can alter it. By no act of his can the covenantee create a situation that renders it inequitable to require him to abide by his covenant. His adventitious appearance in a court of equity at the suit of another person and for a different purpose can surely work no such result, yet it is just this fortuitous circumstance that is given effect by the decree below and by the conclusions upon which it is based. The reasons for such conclusion, and, as it seems to me, its fallacy, appear in the following summary of the learned vice-chancellor: "As the company has warranted the title and covenanted for its quiet enjoyment and has thus encouraged White to go on and improve, it seems to me that his equity to compel payment by the company is greater than the company's equity to compel payment out of the land." This conclusion seems to me to involve two unsound propositions, the first of which is that one who has taken a legal covenant for the breach of which the law has established a known measure of damages is thereby encouraged to damnify himself to an extent that such measure will not

repay, and the second is that such voluntary damnification gives rise to an equitable dispensation for such covenantee from the legal incidents of his covenant, even though such dispensation imposes on the covenantor a measure of redress that is alien to his obligation.

The true rule upon this subject is that stated by Justice Sutherland in *Kinney* v. *Watts, 14 Wend. 38:* "A vendee when he purchases may insist upon special covenants which will secure to him a perfect indemnity for any expenditures or improvements upon the premises in case of eviction, but if he takes the general covenants of warranty and quiet enjoyment he has no right to complain that the law does not afford him full compensation for the loss and injury which he has sustained by eviction." To the same effect, *Rawle Cov. Tit.* (*5th ed.*) *234,* and *11 Cyc. 1175.*

If I am at all correct in the view that the rights of these contending defendants over the actual or threatened breach of their covenants must be measured by such covenants, the circumstance that the covenantee had expended money in improving the property purchased of the covenantor was not a ground for equitable interference, or at least should not have prevailed over the covenantor's right to have the amount that would satisfy the mortgage adjusted in the complainant's suit in accordance with the stipulation between those two parties. It is therefore clear to me that the defendant's cross-bill is devoid of equity, or, rather, that such equity as it has does not go to the extent of requiring the other defendant, the building company, to pay off the complainant's mortgage without regard to the complainant's release of the priority of such mortgage. It has not been overlooked that there is a view that might justify a court of equity in refusing to recognize the priority accorded to the mortgage of the building company by complainant's release, and that is that such release was made by a trustee without any consideration moving to his *cestui que trust* of which by the terms of the release the party who now sets it up had notice. The case, however, has been tried upon the theory that the release was valid, and upon this appeal there is no such jeopardy of the infant's property as would justify a court of equity of its own motion to

intervene for the protection of her interests. We have therefore refrained from either considering the question or from calling for a reargument in order that the views of counsel might be heard thereon.

From the foregoing considerations it results that the defendant White's cross-bill should be dismissed; that with this bill dismissed there is no ground for the personal decree against the defendant, the building company, and that with the elimination of this personal decree there is no occasion for the determination of the amount recoverable on the complainant's mortgage under the terms of his release of its priority. In accordance with these views the decree below is reversed and the cause remitted to the court of chancery to be proceeded with as if said cross-bill had not been filed; the infant to be made a party and an answer attacking her guardian's release filed in her behalf if it appears to the court below that such course is required for her protection.

*For affirmance*—REED, BOGERT—2.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, FORT, GARRETSON, HENDRICKSON, PITNEY, SWAYZE, VREDENBURGH, VROOM, GREEN, GRAY, DILL—12.