[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 534 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 535 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 536 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 537 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 538 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 539 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 540 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 541 
This is a complaint seeking the following relief by the plaintiff: — the removal of an alleged cloud on the title to a parcel of real estate resulting from a judgment levy made by the Federal Deposit Insurance Corporation; a judgment establishing the order of priority of alleged liens of the plaintiff and the Federal Deposit Insurance Corporation; the revival of a cancelled mortgage on the property involved and subrogation by the plaintiff to the rights of the original mortgagee, and for an injunction against further proceedings for sale under the judgment levy by the Federal Deposit Insurance Corporation.
The defendant Bitler, by way of counterclaim, is seeking a judgment against the plaintiff arising out of a breach of a covenant in a deed from plaintiff to him, if the Federal Deposit Insurance Corporation's judgment is determined to be an encumbrance on the premises. He seeks to recover not only the return of the purchase price, including a cancellation of a purchase money mortgage given to plaintiff, but various other expenditures made by him as well.
The defendant Watson, by way of counterclaim, is seeking a judgment against Bitler arising out of a breach of several covenants in an agreement of sale executed by him and Bitler, if the Federal Deposit Insurance Corporation's judgment is determined to be an encumbrance on the premises. He seeks to *Page 542 
recover not only the return of the money paid on account of his purchase, but various other expenditures made by him, including the cost of improvements to the premises, and as well to be subrogated to any judgment rendered to Bitler against the Camden County Welfare Board.
The facts generally are not in dispute and I herewith specially find such facts to be as follows:
Annie Vandegrift obtained title to the premises commonly known as 119 North Eighth Avenue, Haddon Heights, New Jersey, on October 6, 1906.
On November 15, 1930 the First National Bank and Trust Company of Blackwood, New Jersey, recovered several judgments against Edward H. Vandegrift, husband of Annie Vandegrift, and other defendants as well.
On or about February 18, 1939 the said First National Bank and Trust Company of Blackwood, New Jersey assigned these judgments to the defendant, Federal Deposit Insurance Corporation.
On May 29, 1936 Annie Vandegrift and Edward H. Vandegrift executed and delivered to the Haddon Heights Building and Loan Association a mortgage in the amount of $1000.00, which said mortgage was thereafter recorded on July 6, 1936.
On June 23, 1936 Annie Vandegrift and Edward H. Vandegrift, theretofore having made application to the Camden County Welfare Board for old age assistance, entered into an agreement in conformity and compliance with P.L. 1936, chapter 31, page
61, section 10, (R.S. 44:7-14).
Under date of August 1, 1936 the Camden County Welfare Board executed a certificate of notice of agreement to reimburse which was recorded September 21, 1936 in the office of the Clerk of Camden County.
On December 10, 1941 Annie Vandegrift died, leaving a last will and testament under and by virtue of the terms of which she devised the property here involved to her husband, Edward H. Vandegrift.
On March 3, 1942 the Camden County Welfare Board executed a certificate of reimbursement, which was recorded on April 9, 1942 in the office of the Clerk of Camden County, exhibiting *Page 543 
that advances had, to that date, been made to Annie Vandegrift in the amount of $1211.00.
On September 21, 1942 the Camden County Welfare Board recorded a certificate of reimbursement in the office of the Clerk of Camden County exhibiting that up to July of 1942 advances had been made to Edward H. Vandegrift in the sum of $1552.00.
On June 6, 1944 Edward H. Vandegrift died, having left a will, under and by the terms of which he devised the property involved to his wife, Annie Vandegrift. She having predeceased him, title vested in his heirs-at-law.
On September 7, 1944 the said heirs-at-law of Edward H. Vandegrift voluntarily conveyed the premises involved to the Camden County Welfare Board in satisfaction of its claim for reimbursement. Said deed was recorded on November 11, 1944, at which time the said Camden County Welfare Board obtained affidavits of title from the grantors, which did not exhibit or show the judgment presently held by the Federal Deposit Insurance Corporation.
On February 28, 1945 the Camden County Welfare Board paid $200.00 on account of the mortgage above referred to, held by the Haddon Heights Building and Loan Association. On March 31, 1945 said Camden County Welfare Board paid the sum of $578.74 due the Haddon Heights Building and Loan Association, said sum being the balance due on account of said mortgage. Prior to the payments made on account of said mortgage, the Camden County Welfare Board obtained from the Market Street Title and Abstract Company a search or abstract of title and thereafter obtained from said Market Street Title and Abstract Company a title policy, on neither of which instruments was there shown the judgment above referred to, now held by the Federal Deposit Insurance Corporation.
On April 12, 1945, said mortgage having been endorsed for cancellation, the same was recorded in the County Clerk's office on the same day.
On April 6, 1945 the Camden County Welfare Board conveyed the premises in question to Raymond L. Bitler. A part of the purchase price was satisfied by the execution and delivery *Page 544 
of a mortgage by him to the Camden County Welfare Board.
In the period of time that the said Raymond L. Bitler had title he expended various sums for repairs, improvements, taxes and fire insurance.
On March 26, 1945 Raymond L. Bitler entered into an agreement to sell the premises involved to Jesse W. Watson for a total consideration of $4250.00, said consideration being satisfied by the payment of $500.00 in cash and installment payments of $50.00 per month for 18 months, all of which said payments were made. Said agreement provided for a warranty deed, as follows:
"4. The title to be delivered shall be a marketable title and shall be free and clear of all encumbrances including municipal liens and assessments and liability for assessments for improvements now constructed (except as herein stated), this clause to be operative as of the date of this agreement, and the title is to be subject to all existing restrictions of record, the seller, however, guarantees that there are no restrictions in any conveyance or plans of record affecting the said premises, which will prohibit the use and/or occupancy thereof as a dwelling and the premises shall be conveyed in the same condition as the same now are, reasonable wear and tear excepted."
Watson was given actual possession under the terms of said agreement.
During the time the said Watson was in possession he expended various sums for improvements and repairs.
Watson, in preparation for final settlement and closing, ordered a title policy. Upon the receipt of the search the Federal Deposit Insurance Corporation's judgment was disclosed. Upon advice thereof to Bitler and the plaintiff, after execution by Federal Deposit Insurance Corporation, this action was eventually commenced.
On September 4, 1946 the Federal Deposit Insurance Corporation issued an alias execution under its judgment against Nelson Dyer, et als.
On October 23, 1946 the Sheriff of Camden County advertised the premises for sale on November 22, 1946.
The first question to be determined is whether the Camden County Welfare Board is entitled to a lien upon the real estate here involved for money advanced for old age assistance to *Page 545 
Annie Vandegrift and Edward H. Vandegrift. If the answer to this query is in the affirmative, then whether such lien is prior to the judgment now held by the Federal Deposit Insurance Corporation.
If the plaintiff is entitled to any lien on the premises it must be as a result of the provisions of R.S. 44:7-1 et seq.,R.S. 44:7-14 provides, as far as here pertinent, in part as follows:
"Every county welfare board shall require, as a condition to granting assistance in any case, that all or any part of the property, either real or personal, of a person applying for old age assistance be pledged to said county as a guaranty for the reimbursement of the funds so granted as old age assistance pursuant to the provisions of this chapter, and the total amount of the assistance so granted shall become a lien upon any lands in the ownership of such person, which lien shall have priority over all unrecorded encumbrances."
There are generally three kinds of liens recognized in our judicial system, (1) common law; (2) equitable, and (3) statutory. There is, of course, no common law lien under which the plaintiff could claim any right of priority for the repayment of the monies advanced by it out of the real estate originally owned by Annie Vandegrift and subsequently by Edward H. Vandegrift, nor is the plaintiff entitled to an equitable lien by reason of its advancement. It becomes apparent, therefore, that the lien, if any, to which plaintiff was entitled must be a statutory lien and must arise as a result of the foregoing cited section of the Revised Statutes. The defendant Federal Deposit Insurance Corporation, if it is entitled to any priority, is so entitled by virtue of R.S. 2:27-252, and is entitled also only to a statutory lien.
It becomes important to decide what the expression "lien upon any lands" as employed by the legislature, encompassed. The principal inquiry is to ascertain the intent of the legislature and the significance of the word "lien."
In Cattell v. Rehrer, 94 N.J. Eq. 292, 119 Atl. Rep. 374, the court said, at page 294, as follows:
"Where, as here, the liens asserted are both statutory liens, all decisions appear to be uniform to the effect that the primary inquiry is one of legislative intent." *Page 546 
Generally, common law liens pertained exclusively to personal property, and normally required for their continued efficacy a continuance of possession in the lienor. Over the years, however, the word has acquired much more extended significance and is now generally recognized as a charge upon a particular piece of property, including realty, for the payment or discharge of a particular debt or duty in priority to the general debts or duty of the owner. 33 Amer. Jur. 421.
A lien has been defined as follows:
In Stansbury v. Patent Cloth Manufacturing Co.,5 N.J. Law 433:
"For what is a lien? What is its nature and operation? It is a French word, and originally signified a string, tie, or band, and in the metaphorical sense in which the law uses it, it signifies such hold or claim upon a thing for the satisfaction of a debt, duty or demand, as that it cannot be taken away until the same be satisfied and paid. It is in this sense properly applicable, and I believe originally, in our books, only applied to chattels, things movable and easily passing from hand to hand; and with respect to these, this claim which one has upon them is metaphorically called a lien, a string, which binds them fast and holds them in his possession."
In Lantermen v. Luby, 96 N.J. Law 255, 114 Atl. Rep. 325:
"Derivatively, the word `lien' means a `string,' a `tie,' a `bind.' Century Dictionary. Stansbury v. Patent ClothManufacturing Co., 5 N.J.L. 433. In its pure legal sense it `implies that one is in possession of property of another, and that he detains it as security for some demand which he has in respect to it.'"
Again, in Sullivan v. Clifton, 55 N.J. Law 324,26 Atl. Rep. 964:
"It is one of the characteristics of common-law liens which arise, upon considerations of justice and policy, by operation of law, as distinguished from liens created by contract or statute, that the former, as a general rule, attach to the property itself without any reference to ownership, and override all other rights in the property, while the latter are subordinate to all prior existing rights therein."
The legislature, therefore, must be found to have intended by the quoted phraseology that for the monies advanced for old age assistance, the Camden County Welfare Board is entitled to have as security for the repayment thereof a claim upon the realty of the recipient prior to all other unrecorded *Page 547 
claims (encumbrances) against said realty, and subject to have its debt satisfied out of such realty, subject to the rights of prior recorded claims (encumbrances).
How and when, then, did a lien attach to the realty? Did it arise immediately upon the execution of the statutory agreement hereafter referred to, or was it necessary that the agreement or some notice thereof be filed or recorded in a public office?
There was no express legislative authority for the recording of the "notice of agreement to reimburse" which was recorded here on September 21, 1936. The argument has been advanced that no lien came into being until the plaintiff filed the certificate provided for in R.S. 44:7-15 and then only to the extent that such certificate exhibited the money actually advanced. This certificate was not filed until April 19, 1942. It would appear that the legislature intended first to create a lien by R.S.
44:7-14 upon the real estate of the recipient of the old age assistance without requiring either the agreement or any notice thereof to be filed or recorded in any public office, and then byR.S. 44:7-15 made a provision for the satisfaction and payment of the monies actually so advanced by providing that the proceedings for the enforcement of the lien should be identical with those for the enforcement of a judgment of law.
Objection has been made arguendo that there is no provision in the statute for the registration, recordation or filing of the reimbursement agreement in any public record and that, therefore, no public notice would be given to subsequent grantees, encumbrancers or lienors. The answer to this argument is to be found in Crucible Steel Co. v. Polack Tyre and Rubber Co.,92 N.J. Law 221, 104 Atl. Rep. 324, where the Court of Errors and Appeals, in considering the Garage Keepers' Lien Act, said as follows:
"Counsel of appellant seems to have taken it for granted that the failure of the statute to make any provision for registration of the transaction in some official book of record where a chattel to which a lien has been attached, is permitted by the lienor to go out of his possession invalidates the statute and renders it unconstitutional. This is clearly not so."
It is to be noted in passing that the legislature amendedR.S. 44:7-14 in providing for a filing similar to that required under *Page 548 R.S. 44:7-15 and so removed any doubt now raised by Federal Deposit Insurance Corporation's foregoing arguments.
Under R.S. 44:7-14 the lien was born and continued. The lien of the Camden County Welfare Board, therefore, having appended itself to the real estate of Annie Vandegrift on June 23, 1936, continued and was in existence on the date of her death, when her husband, by devise, became vested with the title.
Since it was the legislative intent to create a lien on the real estate of the recipient of old age assistance from the date of the agreement to reimburse, and since at that time title was vested in Annie Vandegrift, against whom the Federal Deposit Insurance Corporation had no judgment, and Edward H. Vandegrift did not obtain title until subsequent to such agreement of reimbursement, the Camden County Welfare Board is entitled to a prior lien on the premises to the extent of the money advanced by it for old age assistance during the continued ownership of Annie Vandegrift, i.e., up to December 10, 1941, the date of her death. This lien is prior to the judgment lien of Federal Deposit Insurance Corporation.
However, in considering the claimed priority of the lien of the Camden County Welfare Board over the Federal Deposit Insurance Corporation judgment, subsequent to the date of the death of Annie Vandegrift, we must reach a different conclusion. It must be remembered that on June 23, 1936, when the agreement to reimburse was executed, for which provision is made in R.S.
44:7-14, the fee title to the premises was vested in Annie Vandegrift, and her husband had merely an inchoate right of curtesy, to which its lien could not attach.
The priority of liens is determined by the date as of which they attach to the property involved. Majewski v. Greenberg,101 N.J. Eq. 134, 136 Atl. Rep. 749. Immediately upon the death of Annie Vandegrift her husband became seized, through devise, of the fee title to the premises here involved. Upon such seizure of title the Federal Deposit Insurance Corporation immediately obtained a lien by virtue of the judgment recovered on November 15, 1930. *Page 549 
 R.S. 44:7-14 very clearly makes the lien of the Camden County Welfare Board prior only to "all unrecorded encumbrances." This demonstrates a clear intent not to attempt to affect or disturb recorded encumbrances. A judgment is, of course, an encumbrance, and since this judgment was recorded or docketed, even though unknown to the Camden County Welfare Board, any advances thereafter made by it succeeded in creating a lien subject to existing recorded encumbrances, i.e., the lien of the Federal Deposit Insurance Corporation judgment. It is therefore here held that the judgment of the Federal Deposit Insurance Corporation is superior to any advances made by the Camden County Welfare Board subsequent to December 10, 1941, the date of the death of Annie Vandegrift.
In this situation, it becomes necessary to consider the demand of the Camden County Welfare Board for a reinstatement of the mortgage allegedly mistakenly paid off by it.
Diligent counsel have not cited any cases directly parallel to that now under consideration, nor has the court been able to discover any such New Jersey cases. There are, however, numerous reported decisions closely related by analogy to that which we are now considering, arising especially where an existing mortgagee, upon a refinancing and replacing of his mortgage, finds himself in a position where intervening lienors disturb or displace the original priority of his mortgage. In order to be relieved from such a situation it is necessary that the mortgagee's mistake be one of fact and not of law, and further, that no other person be prejudiced or has changed his position in the reliance upon the discharge of the old mortgage.
Although the plaintiff might be held to have had constructive notice of the existence of the judgment, this fact in itself would not be sufficient, under certain circumstances, to preclude it from succeeding as prayed.
In Seeley v. Bacon, 34 Atl. Rep. 139, the court said: atpage 141:
"Where the act done by mistake is one calculated to induce others to take a line of conduct which will put them to loss if the mistake is corrected, it ought to be clear that the party asking for relief has been led into the mistake in spite of the employment of the highest degree of vigilance. Where, however, no one is injured by the mistake *Page 550 
but the party himself, and no one has changed his position by reason of the act executed through the influence of the alleged mistake, I see no reason why the mistake should not be corrected, although the highest degree of vigilance has not been exercised."
In Institute B. L. Assn. v. Edwards, 81 N.J. Eq. 359,86 Atl. Rep. 962, the court said:
"But what degree of vigilance is to be exercised must depend upon the facts of each case. Where the act done by mistake is one calculated to induce others to take a line of conduct which will put them to loss if the mistake is corrected, it ought to be clear that the party asking for relief has been led into the mistake in spite of the employment of the highest degree of vigilance. Where, however, no one is injured by the mistake but the party himself, and no one has changed his position by reason of the act executed through the influence of the alleged mistake, I see no reason why the mistake should not be corrected although the highest degree of vigilance has not been exercised."
And again, at page 366,
"No injury or prejudice resulted to the judgment creditors, defendants herein, from the cancellation of the record of the mortgage in question; that mortgage was a valid first lien at the time the judgments were entered; the judgment creditors have done nothing because of or in reliance upon the cancellation of complainant's mortgage. The relief sought is the re-establishment of the former relation of the parties, which relation has not been intentionally abandoned by complainants. It is clear therefore, that if the relief here sought be refused, it must be upon the abstract theory that relief cannot be granted to one who has been negligent, even though the negligence has been harmless and has been wholly inoperative to injure anyone. The application of that doctrine to the present case would be operative to visit a penalty on complainant for its harmless negligence to the amount of the judgments and to award the amount of that penalty to the judgment creditors who are clearly no more entitled to it than any stranger, except from the circumstance that they now occupy an artificial position in which they may avail themselves of it, for their judgments were entered by them as a lien on the equity of redemption of the mortgagor only. Unless negligence, when considered by a court of equity as a bar to equitable relief, is to be measured in the ascertainment of its inherent quality and force by its effect upon the interests of others, there would seem to be in this branch of equity jurisprudence a radical departure from the rules which have heretofore controlled both courts of law and equity in the administration of remedial justice."
And again at page 367,
"And it may, I think, be appropriately added that the chief aim and purpose of our recording statutes is the protection from loss of *Page 551 
innocent purchasers and encumbrancers who have changed their position to their detriment without notice, actual or constructive, of prior liens or conveyances. I am convinced that in a case of this nature, where no one has been injured by the mistake but the party complainant and no one has changed his position by reason of the act which has been performed in consequence of the mistake, relief cannot be properly denied upon the theory that a high degree of viligance has not been exercised by complainant. The negligence of complainant in failing to procure proper searches should, I think, be thus considered with reference to its effects on the rights of others, and, so considered, cannot be properly regarded as that type of culpable negligence which appropriately affords a bar to equitable relief. In addition to the cases already cited, the following cases, all essentially the same as the present case, do not regard the neglect of complainant to procure searches as operative to bar the relief of restoration of the canceled lien as against an intermediate encumbrancer. Pearce v. Buell, 22 Ore. 29, 33;Wooster v. Cavendar, 54 Ark. 153; Piper v. Headlee,
39 Ill. App.? 93; Sledge v. Obenchain, 58 Miss. 670, 675; Geibv. Reynolds, 35 Minn. 331; Walters v. Walters,73 Ind. 425; Cansler v. Salls, 54 Miss. 446."
See also Jackson Trust Co. v. Gilkinson, 105 N.J. Eq. 116,147 Atl. Rep. 113; Hutchinson v. Bramhall, 42 N.J. Eq. 372,7 Atl. Rep. 873; Home Owners' Loan Corp. v. Collins,120 N.J. Eq. 266, 184 Atl. Rep. 621; Rieth v. Bebe RealtyAssociates, Inc., 122 N.J. Eq. 67, 192 Atl. Rep. 378;Cliffside Park etc. Co. v. Progressive, Theatres Inc.,122 N.J. Eq. 109, 192 Atl. 520; Chiehi Lombardo Bldg. Co. v.Herrmann, 121 N.J. Eq. 252, 189 Atl. Rep. 625.
The plaintiff here exercised reasonable diligence prior to paying off the mortgage. There are here present no innocent third parties, whose interest attached to the realty subsequent to the cancellation of the mortgage, who woud be detrimentally affected if the cancelled mortgage were reinstated and the plaintiff subrogated to the rights of the original mortgagee.
The subrogation here requested is not the result of an express agreement but is the result of an equitable principle. Normally, as stated in Schmid v. First Camden National Bank Trust Co.,130 N.J. Eq. 254, at page 266, 22 A.2d 246,
"While subrogation is founded on principles of equity and even of benevolence, yet it will not be decreed in favor of a mere stranger or volunteer, who without any duty paid the debt of another. Anyone, being under no legal obligation or liability to pay and having no interest menaced by the continued existence of the debt, is a stranger, *Page 552 
and if he pays the debt is a mere volunteer. 25 R.C.L.,Subrogation, par. 11; Shinn v. Budd, 14 N.J. Eq. 234; NorthRiver Construction Company's Case, 38 N.J. Eq. 433, 436; affirmed, sub nom. Upper v. Green, 40 N.J. Eq. 340; Fay v.Fay, 43 N.J. Eq. 438, 440; 11 Atl. Rep. 122; Pierson v.Phillips, 85 N.J. Eq. 60; 95 Atl. Rep. 622. Where, however, one has an interest which is jeopardized by the continued existence of a debt of another and, to protect that interest, pays the debt, he is not to be considered a volunteer. Suydam v.Voorhees, 58 N.J. Eq. 157; 43 Atl. Rep. 4; Hildreth v.Vineland Trust Co., 104 N.J. Eq. 317; 145 Atl. Rep. 625.
"`It is unquestionably the rule that, when an obligation is discharged by one not primarily liable for it, but who believes himself to be acting either in the performance of a legal duty, or for the protection of a legal right, or at the request of the party ultimately bound, and even in certain other cases, favored by public policy, where none of the above circumstances may be present, the party thus discharging the obligations is entitled in equity to demand, for his reimbursement, and subject to any superior equities, the performance of the original obligation, and the application thereto of all securities and collateral rights held by the creditor. Polhemus v. Prudential RealtyCorp., 74 N.J.L. 570, 572; First National Bank of Freehold v.Thompson, 61 N.J. Eq. 188; Pom. Eq. Jur. Sec. 2343; 60C.J. 694.'"
The plaintiff, although not primarily liable, did pay off the mortgage for the protection of its legal right and is no stranger. Normally, the owner of the fee title will not be permitted to keep alive an encumbrance on real estate which he has satisfied. The theory of merger is one of ancient recognition. The question of whether the fee simple title obtained by one holding something less than such fee in realty, as for instance, a mortgage or other lien, will result in an extinguishment of the mortgage or lien, is one of intention. Here the plaintiff accepted a voluntary conveyance in satisfaction of the amount due it without recourse to the statutory method for realization on its lien, under the mistaken impression that its claim for reimbursement was paramount and that the realty was not otherwise encumbered, except for such mortgage. In this posture, had it known of the existence of the Federal Deposit Insurance Corporation's judgment it could have refused the deed and, incidentally, not have paid the balance due on the mortgage. Predicated upon the above stated misapprehension, it did pay a debt which it was not primarily obligated to pay. Had it not so obtained the cancellation of the mortgage, *Page 553 
the position of the Federal Deposit Insurance Corporation would have been the same as it now would be if a revival of the mortgage were permitted. The lien of the judgment would then have been subject to (1) the lien of the mortgage, and (2) the lien for the sum advanced for old age assistance to Annie Vandegrift during her lifetime. Under the circumstances, it cannot be here said that the plaintiff should be held to have irrevocably intended to cancel the mortgage. Equity should, where as here there intervene no third parties' rights, place the parties in as near the same position as that which they occupied at the time of the action taken through a mistake of fact, and especially where the result attained is merely the re-establishment of the status quo ante.
It is the general rule that a pro tanto subrogation will not be decreed. However, where justice requires, a pro tanto subrogation may be decreed. Schmid v. First Camden National Bank TrustCo., supra.
In view of the fact, therefore, that it appears here that the position of the Federal Deposit Insurance Corporation as it existed at the time that the mortgage was paid off by plaintiff under a mistake of fact, would not be altered or changed if the mortgage were reinstated to the extent of the payment made by the plaintiff, it is ordered that such mortgage be reinstated to that extent.
Plaintiff has argued that the Federal Deposit Insurance Corporation should be estopped from asserting the lien of its judgment, apparently relying upon Todd v. Exeter Land Co.,104 N.J. Eq. 431, 146 Atl. Rep. 303, where the court said as follows:
"The principle of equitable estoppel proceeds upon the ground that he who has been silent as to his alleged rights when he ought in good faith to have spoken, shall not be heard to speak when he ought to be silent. A person is not permitted to deny a state of things which by his culpable silence he has led another to believe existed and who has acted accordingly upon that belief. The doctrine always presupposes error on one side and fault or fraud upon the other, and some defect of which it would be inequitable for the party against whom the doctrine is asserted to take advantage."
Suffice it to say in answer to this argument, that the Federal Deposit Insurance Corporation judgment was a matter of *Page 554 
record of which plaintiff and the answering individual defendants had constructive notice for the purpose of this contention. There was here no culpable silence on the part of the Federal Deposit Insurance Corporation, nor was it required, in good faith, to speak. The record is void of any proof that the Federal Deposit Insurance Corporation had knowledge of the conveyance to Bitler or of the repairs and improvements made to the premises by him and Watson. If anything, the inference is present that Federal Deposit Insurance Corporation had no knowledge of these circumstances before their accomplishment. Federal Deposit Insurance Corporation is, therefore, not estopped from asserting its lien.
Plaintiff has demanded that the execution on the judgment after the death of Edward H. Vandegrift be declared void.
At common law a judgment did not survive the defendant against whom it was rendered. Although execution cannot issue except upon the compliance with statutory requirements upon the decease of a judgment debtor, the lien survives and continues. Freeman onJudgments, par. 1009, sec. 1085A.
By statute, provision is made for the issuance of execution after death of one of several judgment debtors. R.S. 2:27-337. The Federal Deposit Insurance Corporation did not comply with the terms of this legislative enactment subsequent to the death of Edward H. Vandegrift and prior to the issuance of execution. Its present execution and levy is therefore void and will be set aside and for nothing holden.
Having disposed of the litigation insofar as the establishment of the relative rights of plaintiff and Federal Deposit Insurance Corporation are concerned, it becomes necessary to consider the respective claims of defendants Bitler and Watson.
The conveyance to Bitler was by deed containing a covenant of general warranty. Such a warranty is tantamount to a covenant of quiet enjoyment. The rule of damages is the same in one as in the other. Such a covenant is broken by eviction, actual or constructive. Vol. 2, Commentaries on the Law of RealProperty, Walsh, p. 435; Vol. 7, Thompson on Real Property,p. 216. *Page 555 
In order to be entitled to damages there must be such eviction. In Kellog v. Platt, 33 N.J. Law 328, the court said at page 332:
"Generally, in books of authority, the words ouster, or eviction, are used in this connection in a qualified sense, different from the ordinary acceptation of those terms."
"With more accuracy, Mr. Rawle considers the subject under two principal heads: first, where the dispossession is actual, and secondly, where there is a virtual or constructive eviction.Rawle on Covenants 256."
And on page 334:
"It must not be supposed, however, that the existence of paramount title, and the acquisition of it by the covenantee by purchase, of his mere volition, will amount to a constructive eviction sufficient to support an action on the covenant of warranty. To adopt such a principle would be to confound a covenant of warranty with covenants for seizin or against encumbrances, and to disregard the distinction which gives to the former its negotiable quality as an incident of the inheritance, and maintains it as a covenant unbroken, and therefore excludes it from the rule of the common law, that a chose in action is incapable of assignment. To preserve the quality of transmissibility in covenants of warranty, the obligation must be prospective to be incurred by some act done under the adverse title hostile to the title under which the covenantee holds, either by entry or the bringing of the suit — or at least by its assertion in some way, under such circumstances as shall induce a well founded belief that it will be enforced, under the menace of which the covenantee honestly yields, and he may be said to have suffered an involuntary loss of the possession under his defective title. When a paramount title is asserted by such acts, or under the circumstances mentioned, a constructive eviction takes place, and the covenantee may abandon the possession, or purchase in the adverse title, and retain his remedy upon the covenant of warranty."
See also Greenwood v. Robbins, 108 N.J. Eq. 122,154 Atl. Rep. 333; Carter v. Executors of Denman, 23 N.J. Law 260.
The actual issuance of execution by the Federal Deposit Insurance Corporation on a judgment which is herein held to be a lien upon the premises, and its threat to continue to attempt to satisfy its debt through issuance in the future, even though it is here held that the present execution is void, constitutes a constructive eviction. Watson, who is in possession by reason of Bitler's title, is not in peaceable and undisturbed possession. *Page 556 
Bitler has counterclaimed for the damages resulting from a breach of the covenant of warranty and demands judgment for the amount of the consideration paid to plaintiff for the purchase, sums expended by him on the premises, and for such judgment as may be rendered against him for the benefit of Watson, except for what monies were paid by Watson to him on account of the purchase. The deed to Bitler contains no covenants except that of warranty.
Under the overwhelming authority of the cases, in the absence of fraud, upon a breach of a covenant of warranty contained in a deed, a plaintiff is entitled only to the consideration actually paid by him, with interest thereon for six years, and costs of suit. No allowance can be made for such improvements made or other expenses incurred by a covenantee.
In Marsden v. White, 71 N.J. Eq. 224, 65 Atl. Rep. 181, the Court of Errors and Appeals said, at page 231:
"The exact amount for which the grantee could hold his grantor was thereby liquidated; hence it seems clear to me that no improvement such grantee chose to make upon the property could impose upon his grantor any greater burden. This is also true with respect to the warrant of title and the covenant for quiet enjoyment. The law prescribes just what one party may recover from the other for the breach of these covenants, and this measure of redress by legal intendment forms part of the contract of the parties, so that the mere existence of such a covenant implies that the parties have agreed with each other, the one to accord and the other to accept, upon the happening of a certain event, a known measure of damages. Such measure of damages has not only, as pointed out by the learned vice chancellor, been established by the decisions of our Supreme Court from an early period (Stewart v. Drake, 9 N.J. Law (4 Halst.) 139;Holmes v. Sinnickson, 15 N.J. Law (3 Gr.) 313; Morris v.Rowan, 17 N.J. Law (2 Harr.) 305; De Long v. Spring LakeCo., 65 N.J. Law (36 Vr.) [1] 10); but has also, in principle, been followed by this Court in a case where the land had been appreciated by improvements, viz., Gerbert v.Trustees, 59 N.J.L. (30 Vr.) 160."
In Holmes's Ex'rs, v. Sinnickson, 15 N.J. Law 313, the court said:
"Not content to receive back the consideration money which was the value of the land at the time it was sold, together with six years' interest to countervail his liability for mesne profits, and the costs of eviction, he has been struggling after other allowances, such as for improvements that he has put on the land, the formation of gardens, avenues, parks, palaces and the endless embellishments that taste and *Page 557 
luxury can invent; but courts of justice have as firmly resisted all such claims, as being innovations on the common law measure of recompense. I shall not state any of the numerous cases that are to be found on this subject, because they have been collected and reviewed by Chancellor Kent with his usual ability, in 4Kent's Com. 463, and shall only give the result of them, in his words. — `The uniform rule is, to allow the consideration money, with interest, and costs, and no more.'"
The only case to the contrary is Hulse v. White,1 N.J. Law 173, which is quite patently overruled by the foregoing cases.
There is here no allegation or proof of fraud which would serve to increase the element of damages to which the covenantee, Bitler, would be entitled.
Bitler claims to be entitled to further damages by reason of the following clause in his agreement to purchase from plaintiff:
"4. The title to be delivered shall be a marketable title and shall be free and clear of all encumbrances including municipal liens and assessments and liability for assessments for improvements now constructed (except as herein stated), this clause to be operative as of the date of this agreement, and the title is to be subject to all existing restrictions of record, the seller, however, guarantees that there are no restrictions in any conveyance or plans of record affecting the said premises, which will prohibit the use and/or occupancy thereof as a dwelling and the premises shall be conveyed in the same condition as the same now are, reasonable wear and tear excepted."
There is no covenant against encumbrances in his deed. Although his agreement of purchase contained a provision concerning freedom from encumbrances, he accepted a deed with merely a covenant of warranty. There is no proof of fraud nor any request for a reformation of this deed. Under normal circumstances the acceptance of a deed for land is to be deemed prima facie full execution of an executory contract to convey, unless the contract contains covenants collateral to the deed. To be deemed collateral and independent, a covenant must not look to or be connected with the title, possession, quantity or emblements of land. Bogert v. Citizens First National Bank Trust Co.,131 N.J. Law 218, 35 A.2d 706; Dieckman v. Walser,114 N.J. Eq. 382, 168 Atl. Rep. 582; Sprague v. Eypper Beckmann, Inc., 114 N.J. Eq. 445, 168 Atl. Rep. 659. *Page 558 
The covenant in Bitler's agreement for a "marketable title * * * free and clear of all encumbrances" was not a collateral covenant and his acceptance of the deed is deemed full execution of the agreement, and the latter becomes void.
In Dieckman v. Walser, supra, the Court of Errors and Appeals said, at page 385,
"It is the general rule that the acceptance of a deed for land is to be deemed prima facie full execution of an executory agreement to convey, and thenceforth the agreement becomes void, and the rights of the parties are to be determined by the deed, not by the agreement. Until consummated, an executory contract is subject to modification. In all cases, the deed, when accepted, is presumed to express the ultimate intent of the parties with regard to so much of the contract as it purports to execute. The executed contract supersedes all prior negotiations and agreements, where the last contract covers the whole subject embraced in the prior one."
Therefore, Bitler is entitled to a judgment against the plaintiff for the amount of the cash he paid to it, with interest and costs of this suit, and a cancellation of his mortgage given to it.
Watson is here suing, not for a breach of a covenant of warranty, but rather for a breach of a covenant to convey with a warranty of title and a covenant against encumbrances.
The measure of damages for the breach of a covenant against encumbrances is set forth in Fagan v. Cadmus,46 N.J. Law 441, affirmed, 47 N.J. Law 549, 4 Atl. Rep. 323, where the court said, at page 445:
"The measure of damages in action for a breach of the covenant against encumbrances differs in three classes of cases. First, where the encumbrance is a debt which has been paid by the covenantee; second, where it might have been, but has not been, so paid; and third, where the encumbrance is such that it cannot be discharged, as a servitude or unmatured mortgage. In the first class of cases the covenantee recovers what he has paid; in the second class he recovers nominal damages only, and in the third class he recovers an amount estimated as a compensation for the depreciated value of the land resulting from the existence of the encumbrance. Sedg. on Damages, 179."
In the matter sub judice, Watson has made no payment on account of the judgment. Normally, he would be entitled only to nominal damages in this situation. The reason for such a *Page 559 
rule finds its foundation in the pronouncement in Stewart v.Drake, 9 N.J. Law 139, where the court said, at page 141:
"If there be a subsisting mortgage at the time of the conveyance, the grantee, under a covenant against encumbrances, may recover damages, because there is a breach, but they shall be nominal only, where he remains undisturbed, and has paid nothing to the mortgagee; for the encumbrance may be removed by the grantor, or he may be compelled by the mortgagee to discharge it, or the grantee may otherwise remain forever unaffected by it. If the grantee has extinguished the encumbrance, he shall then recover in damages the amount paid to extinguish it, if fair and reasonable, with interest, and in some cases, where an action on account of the encumbrance has been brought against him, the costs also of such action. Prescott v. Trueman, 4 Mass. 627,Delavergne v. Norris, 7 Johns. 358, Standard v. Eldridge,
16 Johns. 254. Funk v. Voneida, 11 Serg. and Raw. 109. These cases are, however, instances of partial encumbrances only; where the grantee retains the land, but is subjected to a partial inconvenience, and they stand on the sound principle, that the grantee should be fully satisfied for the injury he has sustained, but that holding the land and deriving a partial benefit, his redress shall be conformed to such circumstances."
See also Hasselbusch v. Mohmking, 76 N.J. Law 691,73 Atl. Rep. 961. If his suit were for a breach of a covenant to convey with a covenant of quiet enjoyment or of warranty only, no recovery could be had by Watson against Bitler, except for so much as if the covenant had been included in a deed, i.e., the purchase price, with interest and costs. Drake v. Baker,34 N.J. Law 358; Gerbert v. Trustees, 59 N.J. Law 160,35 Atl. Rep. 1121; Smith v. Smith, 90 N.J. Law 282,101 Atl. Rep. 254.
The question arises as to whether the presence of the right to recover only nominal damages for a breach of the covenant against encumbrances prevents the recovery of substantial damages for the breach of the covenant of warranty. The mere existence, however, of a right to recover nominal damages for a breach of a covenant against encumbrances will not prevent a recovery of substantial damages on a covenant of warranty where there is an eviction, actual or constructive. Smith v. Wahl, 88 N.J. Law 623,97 Atl. Rep. 261.
Therefore, Watson is entitled to recover from Bitler the amount of his purchase price, with interest and costs, as aforesaid, upon the covenant of warranty, but is not entitled to recover any other sums. *Page 560 
Since Watson has requested that he be subrogated to the judgment which Bitler may recover against the plaintiff, this request will be granted, subject as hereafter stated.
The plaintiff is granted thirty (30) days within which to obtain a release from the judgments held by the Federal Deposit Insurance Corporation, and to cancel its own liens on the premises. If this is obtained, the Camden County Welfare Board will not be subject to any judgment at the hands of Bitler. Bitler, in turn, will not be subject to any judgment at the hands of Watson and can convey the title he contracted to convey to Watson.
If plaintiff does not obtain the foregoing release and cancel its liens, judgment will be entered for Watson against the Camden County Welfare Board in the amount of the purchase price paid to it by Bitler, and Bitler's mortgage to it will be ordered surrendered and cancelled. Judgment will also be entered for Watson against Bitler for the amount of the purchase price paid Bitler, less the amount of the judgment granted to Watson against the Camden County Welfare Board. Interest and costs of this suit will also be granted to both Bitler and Watson in accordance with the foregoing.